## 9087. ARTHUR v. GEORGIA COTTON COMPANY.

JENKINS, J. 1. Where the owner of property engages another to find a purchaser for it and to negotiate terms of sale at a named minimum price or better, and such person, with or without compensation, assumes such duty, and, by virtue of his delegated authority, procures a purchaser for the owner, and the owner consummates a contract of sale with the buyer upon terms which have been arrived at solely by virtue of the previous negotiations thus had, the relation which subsists between the seller and the one acting for him in such previous negotiation of terms is that of principal and agent. The mere fact that a confidential agent, who thus exclusively negotiated to an agreement the actual terms of sale, had only the authority to negotiate, but was not empowered to make a binding contract for his principal, would not make him simply an intermediary or middleman. "A middleman is employed to bring two or more parties together; the parties, when they meet, to do their own negotiating and make their own bargains. He sustains no confidential relation to either party." 5 Words & Phrases, 4500.

2. The first duty of an agent is that of loyalty to his trust. He must not put himself in relations which are antagonistic to that of his principal. His duty and interest must not be allowed to conflict. He can not deal in the business within the scope of his agency for his own benefit (Civil Code of 1910, § 3583; *Sessions* v. *Payne*, 113 *Ga.* 955 (39 S. E. 325); *Forlaw* v. *Augusta Naval Stores Co.*, 124 *Ga.* 261 (52 S. E. 898); *Williams* v. *Moore-Gaunt Co.*, 3 *Ga. App.* 756 (60 S. E. 372); 1 Mechem on Agency, § 1228); nor is he permitted to compro-. mise himself by attempting to serve two masters having a contrary interest, unless it be that such contracts of dual agency are known to each of the principals. A violation of any of these obligations, of which the opposite party had notice, will authorize the principal to promptly rescind a contract thus negotiated in his behalf. It is immaterial in such a case that fraud by the agent was not actually intended, or that no injury was in fact occasioned to the principal. These rules of law are not merely remedial for actual wrongs which have been consummated, but are intended to be preventative as well. Thus, an agent, be he gratuitous or otherwise, who has been entrusted with authority to negotiate the terms of sale for his principal is not permitted to receive from the buyer a secret profit from his principal's property, and if such an agent places himself in a position antagonistic to that of his principal, by receiving from the buyer a secret consideration for any act within the scope of his agency, the contract thus negotiated by the agent in his own interest is not binding upon the principal. The question is not whether such a payment to the confidential agent resulted in actual harm to the principal, or whether it was the actual inducement which brought the parties into agreement; but the question is whether or not such a secret payment could be taken as a consideration for any act on the agent's part within the scope of his agency—whether such a payment or promise of payment might make it the personal interest of the agent so to agree. 1 Mechem on Agency,

§ 1199; 31 Cyc. 1432,. 1433; Tyler v. Sanborn, 128 Ill. 136 (21- N. E. 193, 4 L. R. A. 218, 15 Am. St. R. 97).

3. Under the undisputed evidence in this case the jury found that the sole consideration of the undisclosed promise of the buyer' to the agent of the seller was the agent's guaranty of his principal's. contract. Since such an agreement lay wholly beyond the scope of the agency, it can.not be said as a matter of law that the interest of the agent in negotiating the terms of sale could have been affected thereby.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*

DECIDED JUNE 12, 1918.

Action for·breach.of contract; from city court of Albany—Judge Clayton Jones. June 24, 1917.

The Georgia Cotton Company sued R. R. Arthur, alleging, that he contracted in writing to deliver to it, on or before October 31, 1916, at any .warehouse in Albany, Georgia, 100 bales of cotton of the average weight of 500 pounds, the company .agreeing to pay him 12 cents per pound, basis good middling; and that on October 25, 1916, he notified the plaintiff of his intention not to comply with the contract, and of his election to rescind .it. The suit was for the difference between the contract price and the market price of the cotton at the time and place specified therein, and amounted to $3,250. The defendant, by his answer, admitted a prima facie case, and assumed the burden of proof. His plea was to the effect that the contract sued on was void for fraud; that he was a customer of the Albany Warehouse Company, and, shortly before the execution of the contract, had requested its representative, J. P. Champion, to sell for him 100 bales of his cotton, and to obtain for the cotton at least 12 cents a pound, and more if possible; that he was assured by the said Champion a few days later that he could only get 12. cents, and he thereupon signed the contract sued on; that the plaintiff, "in collusion with the said Jim Champion, fraudulently agreed, unknown to this defendant, to pay 12⅛ cents per pound for said cotton, and to pay the ⅛ cent on the side to Jim Champion, as a representative of the Albany Warehouse Company," thereby defrauding the defendant, without his knowledge, out of that amount. By amendment he alleged in substance that Champion acted as agent for both him and the plaintiff, and that on account of this dual agency the contract was void. J. S. Billingslea, vice-president of the Georgia Cotton Company, and Champion testified to the effect that Billingslea agreed that if Champion would guarantee the performance of the contract, the

Georgia Cotton Company would pay to him one eighth of a cent a pound in consideration of the guaranty, and that the cotton company entered into a contract with Champion to this effect. It appears, from the evidence, that Billingslea said nothing to Champion as to not telling the defendant about the guaranty, but the defendant was not informed in regard to it. No evidence was submitted by the plaintiff. The jury found a verdict in favor of the plaintiff for the amount sued for. The defendant made a motion for a new trial, on the usual general grounds, and on the ground that the court charged the jury that an agent has the legal right to guarantee the contract of his principal, without also charging them that such can not be the case if he is making a profit thereby, unless it be done with the principal's knowledge and consent.

*Walters & Redfearn,* for plaintiff in error.
*Pottle & Hofmayer,* contra.