### SMITH *v.* PENNINGTON.

No. 13623. June 16, 1941. Rehearing denied July 9, 1941.

*Francis Fuller, W. L. Bryan,* and *John E. Feagin,* for plaintiff. *Jones, Jones & Sparks* and *John M. Hancock,* for defendant.

Atkinson, Presiding Justice. The plaintiff sued in equity to recover from the defendant a sum of money as for the breach of an implied or constructive trust, which he asked the court to declare and decree. The money sought was received by the defendant on March 12, 1935. This action was filed on April 5, 1940. According to the allegations of the petition this money was paid to the defendant in satisfaction of a promissory note executed by the plaintiff on February 3, 1935, payable to the defendant. The petition describes a series of transactions which it is contended gave rise to, or at least should be considered in determining the claim of plaintiff as now asserted. The story as alleged is substantially as follows: Smith, the plaintiff, was a farmer unacquainted with corporate affairs or laws, and unfamiliar with marketing, bookkeeping, or borrowing money. Pennington, the defendant, was the owner of all the capital stock of a corporation, Dixie Farms Inc., which held title to a large farm and certain live stock and farming equipment. In January, 1932, Pennington "persuaded" Smith that it would be to his interest to purchase the farm and stock and equipment, stating that he (Pennington) would continue to handle the

bookkeeping, marketing and business affairs of the farm if the purchase was made, and that he would arrange a loan with the Federal Land Bank for Smith to provide the purchase-money, and would negotiate for him loans to provide operating capital. No terms seem to have been agreed on at the time, but Smith went into possession and so remained until the fall of 1933, when it was agreed that application would be made to the Federal Land Bank for a loan of $47,500. The application was approved for a loan of $24,-400, and it was determined that from the operations of the farm there had been up to the time a profit of $7,500, which should be credited to Smith on the purchase-price. Thereupon the price was agreed on at $31,900. The corporation conveyed the farm to Smith. It is not clear whether this conveyance included the live stock and equipment. Smith executed deeds to the Federal Land Bank, and received and turned over to the corporation the proceeds of the loan as the "balance of the purchase-price." Operation of the farm was continued as before, but in a short time Pennington "persuaded" Smith that it would be to his interest to convey to the corporation the property so acquired, that he could thereby avoid personal liability for debts, and have the benefit of the corporate machinery, etc. This was done. Operations continued as before. In February, 1935, Pennington persuaded Smith that it would be to his interest to acquire the capital stock of the corporation, the only assets of which consisted of the farm, it not being clear again as to the ownership of the live stock and equipment. On this date Smith executed to Pennington his note' for $10,000 in payment for the stock, which was duly transferred to him, this being the note first referred to above. It seems also that before the execution of this note Pennington had negotiated for the corporation a loan from Macon Production Credit Corporation for $6000, out of which there still remained on hand in the corporation $4576.16. Then on March 7, 1935, Pennington negotiated an arrangement between Smith, Dixie Farms Inc., and Bateman Company, under which Bateman paid to Smith $5423.84 for fifty shares (one half) the capital stock of Dixie Farms Inc., with an option to Smith to re-purchase under certain conditions, the Bateman Company also agreeing to supply capital for current farming operations. From these sources the plaintiff then paid Pennington the $10,000 in satisfaction of his note. On November 5, 1935, Smith, instead of

exercising his option to repurchase, sold the Bateman Company his remaining fifty shares of stock for an additional $5000, thus ending his interest in the farm, except for his outstanding liability on the indebtedness to the Federal Land Bank, as to which the Bateman Company indemnified him under the last contract by which his stock was purchased. Demand of Pennington for return of the $10,000 was refused. The prayer was that a trust be decreed for the use of the plaintiff as to this money, and that it be recovered by judgment; and for general relief.

The theory on which the plaintiff would have decreed a trust as to the money paid by him to the defendant is that it was received in fraud of the plaintiff, and therefore was held by the defendant as trustee ex maleficio. The further claim is made that the defendant was the plaintiff's agent and stood in a fiduciary relationship to him as to all of the transactions outlined in the petition. We do not consider that fraud is alleged as to the transaction by which the defendant acquired the note involved, or its payment. The defendant was the owner of the stock which the plaintiff purchased. Its value may indeed have been questionable. It is alleged that the corporation had no assets except those in which the plaintiff had the beneficial ownership, although inferences could be drawn from other allegations which would tend to negative this statement. But in any event the stock represented the voting control of the corporation, which the plaintiff, according to his own allegations, was using "for convenience." He continued to use it, having then in his hand the lever by which it was controlled. There was no representation as to its value. The act of signing the note and acquiring the stock may have represented bad judgment—and indeed from the allegations it seems that the plaintiff made some bad trades all along; but no deception is suggested. He seems to have known the facts as well as the defendant; and except for the "persuasion" of the defendant that these transactions would be to his best interest, he seems to have acted voluntarily. Although the defendant was acting as agent for the plaintiff or the corporation in various ways, such as obtaining loans, marketing crops, etc., no fraud or improper conduct is charged to him in any of those transactions. The complaint relates solely to those transactions in which the two persons were trading with each other—as purchaser and seller. As to these transactions there is no suggestion that any

facts or information were withheld or any deception practiced, or that the agency relationship in reference to other matters was improperly taken advantage of by the defendant.

It is true, as contended, that "The relation of principal and agent is a fiduciary one, and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal; and the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and by reason of such agency; and where the agent invests such profits in property or places the same to his credit in a bank, he will be held to hold the same as trustee for the principal, and the latter can maintain in a court of equity an action to trace such profits into such investments, and to enjoin the agent or his donee from selling, disposing of, or encumbering any such profits or any property in which the same have been invested. Civil Code (1910), §§ 3739, 3780; *Forlaw* v. *Augusta Naval Stores Co.,* 124 *Ga.* 261 (6) (52 S. E. 898); United States *v.* Carter, 217 U. S. 286 (30 Sup. Ct. 515, 54 L. ed. 769, 19 Ann. Cas. 594)." *Stover* v. *Atlantic Ice & Coal Corporation,* 154 *Ga.* 228 (113 S. E. 802). But in the present case it seems clear that no such agency is here established as to the transactions complained of. The principles set forth in our Code, §§ 4-204, 4-205, are generally applicable where the agent is acting or should be acting as such for his principal in dealing with third persons.

If the plaintiff could assert any rights growing out of the conduct complained of, they are not of a nature to be protected in equity as related to the doctrine of trusts; and if they existed on some other theory, as for money had and received or for recovery of personalty, or as in an action for fraud and deceit, they would be barred by the statute of limitations, which requires that such actions shall be brought within four years. Code, §§ 3-1003; 105-302. Thus, without reference to the statute of limitations, which might be applicable to a case in equity to establish a trust and recover its proceeds, no such case was here stated.

*Judgment affirmed. All the Justices concur, except Grice, J., disqualified.*