1. Under the Code, § 81-1002, a general demurrer to a petition seeking temporary and permanent injunction, accounting, and cancellation, may be heard and determined by the judge at an interlocutory hearing before the appearance or first term. Ga. L. 1925, p. 97; Meena v. Piedmont Realty Co., 173 Ga. 844
(162 S.E. 144); Huson Ice Coal Co. v. Covington, 178 Ga. 6 (172 S.E. 56).
(a) Nothing to the contrary was ruled in Justice v. Warner, 178 Ga. 579 (2) (173 S.E. 703). While the plaintiff in that case sought both injunction and cancellation, no demurrer was filed, and it was held that the judge erred, after the introduction of evidence at an interlocutory hearing, in dismissing the entire case, the implication being that the petition stated a cause of action. Compare Ivey v. Rome, 129 Ga. 286 (2) (58 S.E. 852).
2. In the instant case, the plaintiff sought to cancel a lease of timber situated in Morgan County, because of alleged inadequacy of consideration, the defendant's superior actual knowledge of the subject-matter, and other circumstances, including the alleged confidential relation of *Page 684 
attorney and client between the plaintiff as seller and the defendant as purchaser. Held:
(a) "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." Krueger v. MacDougald, 148 Ga. 429 (96 S.E. 867).
(b) Under the allegations of the petition as thus construed, it appears that the relation of attorney and client existed between the parties with respect to litigation and property in Jasper County, but that such relationship did not embrace any of the land or timber in Morgan County.
(c) While a client may rely implicitly upon the acts and words of his or her attorney within the scope of such relationship, "this rule is applicable only to the parties while the relationship exists and with reference to the matter involved in that relationship." Lewis v. Foy, 189 Ga. 596, 600
(6 S.E.2d 788). The petition did not allege facts to show an exception to this rule, if there is one. See, in this connection, Crayton v. Spullock, 87 Ga. 326
(13 S.E. 561); Stubinger v. Frey, 116 Ga. 396 (42 S.E. 713); Jones v. Caraway, 205 Ala. 327 (87 So. 820); Swaim v.
Martin, 158 Ark. 469 (251 S.W. 26); 5 Am. Jur. 289, § 50; 7 C. J. S. 964, 972, §§ 127, 132.
(d) No other confidential relationship was shown, nor was it alleged that the defendant made any misrepresentation of fact or used any artifice to prevent the plaintiff from ascertaining the quantity and value of her own property. "A court of equity will not relieve a vendor of land from his own negligence in not ascertaining facts which he could have ascertained by diligence, the vendee using no artifice or fraudulent scheme in order to prevent the vendor from ascertaining facts which might have prevented him from executing the deed." Morrison v. Colquitt County, 176 Ga. 104 (167 S.E. 321). See also Thompson v. Boyce, 84 Ga. 497 (11 S.E. 353); Martin v. Harwell, 115 Ga. 156
(3) (41 S.E. 686); Browning v. Richardson, 181 Ga. 413
(182 S.E. 516); Karpas v. Candler, 189 Ga. 711, 712 (2) (7 S.E.2d 581), where a confidential relation was shown.
3. Mere inadequacy of consideration alone will not void a contract. If the inadequacy be great, it is a strong circumstance to evidence fraud. Code, § 20-307. Inadequacy of price is no ground for rescission of a contract of sale, unless it is so gross as, combined with other circumstances, to amount to a fraud. Code, § 96-105.
4. Under the preceding rulings, the plaintiff's right to relief, so far as shown by her petition, depended finally and solely upon inadequacy of consideration, and, this being true, the petition did not state a cause of action for cancellation or for the incidental relief of injunction and accounting. Accordingly, the judge did not err in sustaining the general demurrer and dismissing the petition.
Judgment affirmed. All the Justices concur, except Wyatt, J., who dissents.
 No. 14931. DECEMBER 1, 1944. REHEARING DENIED DECEMBER 13, 1944. *Page 685 
Miss Alene Bartlett Hardin filed an equitable petition in the superior court of Jasper County against S. H. Baynes, praying for injunction, for cancellation of a described timber lease covering timber in Morgan County, for damages, and for general relief. An amendment to the petition was offered, which was allowed in part and disallowed in part. On an interlocutory hearing, before the return term, the judge sustained a general demurrer and dismissed the petition as amended. The plaintiff excepted.
The petition as amended alleged: The defendant is a resident of Jasper County. The plaintiff is the owner of a tract of land in Morgan County, consisting of 405 1/2 acres known as the Lovin Place. In August, 1943, the defendant represented the plaintiff in a suit against E. C. Kelly in the superior court of Jasper County, he being associated with her leading counsel. She has lived in Macon, Georgia, for many years, is a kinswoman of the late Judge C. L. Bartlett, and now lives with his widow, Mrs. C. L. Bartlett. Since the death of Judge Bartlett in 1938, she has undertaken to attend to the business affairs of Mrs. Bartlett and of herself in Jasper and Morgan Counties. This has been unusually difficult because of sickness and because of living at a distance from these points.
At the time of the employment of the defendant in the Kelly case, the plaintiff explained to him her difficulties about said lands and properties, and that she desired a local lawyer to assist her in these matters. The defendant at that time professed great interest in assisting her in such matters as removing trespassers from an old family graveyard and as to a contest over the alleged purchase-price of certain Jasper County lands belonging to Mrs. Bartlett. On August 10 and 11, 1943, while representing her in the trial of said Kelly case, he constantly professed his desire to assist her in the sale of the Dickenson Place in Jasper County, a part of which was the subject of the litigation in the Kelly case. He was well aware that she had not been on said lands for many years, and had no knowledge of what timber was on the lands, the value thereof, or the value of the land, and that she had no knowledge of what timber was on the Morgan County land, nor the value thereof. The defendant is an expert timber man, and familiar with the value of *Page 686 
timber, and the plaintiff had absolute faith in him as her attorney at law and advisor. On August 12, 1943, at his request, she met him in Monticello, and he then proceeded to look up certain records in the clerk's office at the courthouse concerning property belonging to Mrs. Bartlett. On the same date, he and the plaintiff proceeded to the Lovin Place in Morgan County, where she explained to him difficulties that she had about renting the place or getting anything from the land, and her great love for it. During the time when she and the defendant were on the said Lovin Place, he left her, and without her knowledge or consent made a thorough investigation of the timber on the place, and secretly obtained from her former tenant the names of three adjoining landowners. She had no intention of selling any of the timber on the Lovin Place. She had told him at the trial of the Kelly case that she only desired to secure enough money at that time, out of the Jasper County timber or from the verdict in the Kelly case, to pay the lawyers and taxes and possibly to pay $400 which she desired to pay, and did not want to sell the lands. Prior to the time when she went with him to the Lovin Place, he had prepared two timber contracts, each for $275, one for the Jasper County timber and the other for the Morgan County timber. On the return trip from Morgan County, he mentioned the fact that she needed about $600, but that, figuring his fee into it, he could pay her only $550 for the timber in the two counties. His casual remark that he could give her only $550 was neither refused nor accepted by her. They were riding in the defendant's truck. Upon arriving back in Monticello late in the afternoon, he took her to his office, where he exhibited to her the two timber contracts prepared by him. She had no idea of executing any contracts or of making any agreement with him at that time, since there was no emergency and she was not expecting to get any money at that time. She suggested that she would retype the contracts and make a carbon copy. As the defendant stood over her and read from the copies he had already prepared, she undertook to incorporate the mutual agreements they might have into the contracts, and not make them unilateral, but the defendant overrode every suggestion she made, and continued to hurry her about catching her bus home. After completing the typewritten sheets, she hastily turned over a sheet in the typewriter, and undertook to type some of the agreements and promises which he *Page 687 
as a lawyer had made to her. As a matter of fact, the matter of timber was confused with and almost lost sight of by the fact that the defendant was professing to represent her in the sale of her land in Jasper County to H. C. Tucker, and in preventing her from selling said lands to E. C. Kelly, a prospective purchaser. The agreement which she wrote out for the defendant to sign is in the following words: "It is hereby agreed between Alene Bartlett Hardin, of Bibb County, Ga., and S. H. Baynes, of Jasper County, that in consideration of certain services that Mr. Baynes has already performed as a lawyer for Miss Hardin, and in consideration of his undertaking and agreeing to represent both Miss Hardin and Mrs. C. L. Bartlett in the matter of straightening out legal matters in Jasper County, that Miss Hardin agrees not to offer for sale either lands in Jasper or Morgan County without first giving Mr. Baynes an opportunity to make an offer or to assist her in such negotiations. Two. Miss Hardin has this day sold to Mr. Baynes certain timber in Morgan and Jasper Counties. It is agreed by Mr. Baynes that he will not record either of such timber contracts in Jasper or Morgan Counties."
Neither said timber contracts nor the agreement to be signed by the defendant were then signed by either the plaintiff or the defendant. If she had been asked to formally execute them at that time, she would not have done so. Said contracts were not completed, and, as she understood, were merely to be held in abeyance during the time in which the defendant was to perform the duties he had agreed to perform as her lawyer, and also pending any sale that he might make of the Dickenson land in Jasper County, professing to be acting only as her lawyer and friend. After the occurrences in his office, just stated, he pretended to go with her to the ordinary's office only for the purpose of obtaining books left there by her in time to catch her bus home, which was nearly due. There the defendant produced from his pocket the alleged timber contracts which had been typed in his office, and asked a bystander to witness her signature to the same. Turning then to the ordinary, the defendant asked him to witness the papers, whereupon she protested that the papers were not to be officially executed, and were not for record. The defendant said to the ordinary: "Oh, go on and sign, either way will do." Still believing that the papers represented only an unfinished agreement between herself *Page 688 
and her lawyer, and also a guarantee of the defendant's fee in the Kelly case, $25 of said fee being represented as cash in each agreement, weary and sick from the long day in the defendant's truck, and in fear of missing her bus, she signed the said two papers. She received no money at that time. That night, the defendant, as she is informed and believes, sold and transferred to H. C. Tucker the Jasper County paper for $550. As she boarded her bus, he handed her the agreement he was to make with her, unwitnessed and signed by him in pencil.
On the night of August 13, 1943, the defendant in company with H. C. Tucker came to her home and aroused her out of bed when she was ill, ostensibly to discuss with her the sale to Mr. Tucker of the Dickenson lands in Jasper County. At that time he offered her $550 for two said alleged timber contracts, which she refused. After prolonged discussion about the sale of the land to Mr. Tucker, and an agreement by her to a proposed option to Mr. Tucker, and her promise not to sell the land to E. C. Kelly, the defendant offered to pay her $600, and $50 was then added to the $550. He had with him a receipt prepared on his letter head for $550, which was changed to $600, and signed by her. He agreed again and again that he would not record the timber contracts, and that the whole matter was to be held in abeyance pending the outcome of the option to Mr. Tucker to purchase the Dickenson place, in which the $600 would be adjusted and taken into consideration. The same night he professed to be interested only in helping her, and privately advised her as to what she could do about selling the Dickenson Place to Mr. Tucker. The $50 added to the $550 for said two timber contracts was advanced by Mr. Tucker. The profit which the defendant received from the sale of one of the timber contracts was sufficient to pay him for any alleged purchase of timber in Morgan County, and he was out nothing. The plaintiff could not believe that, professing to be her lawyer and also her friend, the defendant would defraud her.
In October, 1943, she sold to H. C. Tucker the Dickenson Place in Jasper County, and deducted from the price which said Tucker had previously offered the amounts represented by said two timber contracts. On August 17, 1943, the defendant had placed upon the records of Morgan County superior court a paper, a copy of which is attached as Exhibit A, and a certain alleged receipt for *Page 689 
$300, which "were" never signed by the petitioner. Said "paper" was never witnessed by the ordinary of Jasper County as ordinary, nor was his official seal placed thereon. Said paper as it appears upon the record is a forgery and non est factum.
The plaintiff averred that, even if the defendant had paid her $300 for said timber, the amount is so grossly inadequate as to be constructively fraudulent; that she had, standing upon said Lovin Place in August, 1943, timber of the value of $5000 or other large sum; that the defendant is now actively engaged in removing all of the timber upon said lands; that she is informed and believes that he has already cut and removed from said lands timber in excess of the sum of $5000; and that he is insolvent.
The amendment offered to the original petition sought to make H. C. Tucker a party, and also contained additional allegations of fact. The judge disallowed the paragraphs of the amendment seeking to add Tucker as a party, but allowed the other paragraphs, in which it was alleged: "That both defendant Baynes and defendant Tucker, at the time they came to petitioner's home on said night, repeatedly agreed with petitioner that they would not record the two said alleged timber contracts, but would hold them until the matter of Mr. Tucker's purchase of the Dickenson Place in Jasper County had been determined, petitioner then agreeing that she would not sell the said land to E. C. Kelly until Mr. Tucker had an opportunity to exercise an option of $4000 for said lands; . . that, at that time, defendant Baynes had already sold . . the said Jasper County alleged contract for timber to defendant Tucker for the sum of $550, and that it had been recorded at 9 a. m. in Jasper superior court clerk's office, August 13. That there was on the part of defendants Baynes and Tucker a general scheme and conspiracy to prevent petitioner from selling the Dickenson Place to E. C. Kelly, and that this scheme and conspiracy resulted in the Dickenson Place being so involved by the recording of said timber contract as that petitioner was forced to sell said land to defendant Tucker for [a] sum less than he had previously offered her, said Tucker contending that he had paid defendant Baynes the sum of $550 or $600 for said Jasper County alleged timber contract. That the sums paid by defendants for the two alleged timber contracts did not represent five per centum of the value of the timber on said lands. That the timber on the *Page 690 
Dickenson Place was worth the sum of five thousand dollars, and that on the Morgan County land eight or ten thousand dollars, as petitioner is informed and believes."
The relief sought in the petition as amended related only to the timber in Morgan County and the lease concerning the same. It appeared from the allegations that the lease on the Jasper County timber had been transferred by the defendant to H. C. Tucker. There was no prayer to cancel or avoid that lease, and no exception to the refusal to make Tucker a party defendant.