52365. JERRY LIPPS, INC. v. POSTELL et al.

ARGUED JULY 14, 1976 — DECIDED SEPTEMBER 8, 1976 — REHEARING DENIED SEPTEMBER 22, 1976 —

Levine, D'Alessio & Cohn, Sam F. Lowe, Jr., for appellant.

Long, Weinberg, Ansley & Wheeler, W. Meade Burns, Jr., Dan B. Wingate, Louis F. McDonald, John D. Jones, for appellees.

DEEN, Presiding Judge.

The record in this case runs over 2,000 pages, including lengthy depositions by all parties concerned, and it is clear that there was a full airing of all the facts. We will therefore not concern ourselves with the generally conclusory allegations of the verified complaint. *Resolute Ins. Co. v. Norbo Trading Corp.,* 118 Ga. App. 737 (165 SE2d 441). As we view the case, any liability on the part of the attorneys, the only defendants here involved, depends on the simple question of whether they breached a fiduciary duty arising out of their relationship with Jerry Lipps, Inc. which resulted in damage to the latter. This in turn depends primarily on a chronological statement of events to ascertain whether these defendants, while acting as agents for Lipps, acted for themselves to the detriment of their client (Code § 4-204; *Smith v. Pennington,* 192 Ga. 478 (15 SE2d 727)) in such manner as to make a profit for themselves from the relationship.

The facts are simple. Postell and Hall also represented Superior Trucking Company of Atlanta, which held various "operating authorities" or licenses to carry certain cargo to various locations. Still another firm requested information concerning possible assignment of

the unused portion of the authority. Nothing developed from this. On April 14 and April 20, 1970, the attorneys wrote Todd, with a copy to Lipps, that certain Superior authority might be purchasable, stating the writer felt it would not be worth over $35,000 and possibly an offer of $25,000 might be made. Postell and Hall swear no interest was expressed, and in May or June Lipps stated he was not interested. Lipps admitted he put the letters in the drawer and did nothing about them for some time, but that in "late 1970" he instructed his employee Todd to make a $5,000 offer. Affidavits of the Superior management show positively that such an offer, if made, would have been ignored. Todd did not relay Lipps' interest to anyone, and not until January, 1971, did Lipps apparently tell Hall he wanted to offer the $5,000 by coming on the line during a telephone conversation between Hall and Todd.

Meanwhile, according to uncontradicted testimony, Lipps called Hall in October or November to protest a bill and inform the firm it might finish pending cases but would receive no new business. No new business was ever offered, and the last of the old business was finished up in April, 1971.

Around the first of December Todd asked Postell about the availability of the Superior authority, and gave him to understand he intended setting out in business for himself. Postell at this time indicated he would recommend an offer of $50,000 which was made and refused, and Todd then made a $75,000 offer which was accepted. A sales agreement was drawn up at the beginning of January, 1971. The attorneys referred Todd to a Florida lawyer who chartered Specialized Truck Services, Inc. for him as of February 3, and Hall and Postell, on Todd's behalf, filed an Interstate Commerce Commission application for assignment of the authority on February 4. Early in March, Todd was still telling Lipps, according to the latter, that he wanted to stay with the Lipps firm. The Federal Register carried notice of the license application in its March 2 issue, thus alerting Lipps to his intention, and on March 20 Todd was fired. The authority was in fact not granted by the ICC until the following October.

Although there is some dispute as to when certain conversations took place, and above all the motives for the actions of the various parties, the evidence as a whole demands a finding that the attorneys only worked for Lipps on matters especially entrusted to them and were completely free to represent any other client on any matter for which they had not been previously retained. It is clear that, whatever Lipps' intentions, and regardless of what instructions he may have given his employee Todd (even disregarding Hall's affidavit that Lipps told him in May or June he had no interest in purchasing), neither Todd nor Lipps communicated any interest in acquiring these rights to Hall or Postell until after October or November when Lipps informed them he would seek other attorneys, and after December when Todd indicated his desire to be represented by them in starting his own business. As to the telephone conversation in which Lipps, according to his testimony, instructed Hall in January, 1971, to offer $5,000 (in other words, at just the time Todd was making his sales agreement with Superior for $75,000), if this occurred as contended by Lipps subtle ethical problems might arise as to the duty of Hall to explain to Lipps that he was in fact now representing Todd in the matter. But nothing indicates that Lipps had ever engaged the attorneys to represent himself, and the facts, as well as affidavits from the management of Superior, affirm that at no time, and particularly not at that time, would they have paid the slightest consideration to an offer of $ 5,000 for licensing authorities worth fifteen times that sum. It thus appears that the defendant attorneys did not, while acting as the agents of Lipps, take any action contrary to his interest in any matter in which they had been employed.

We agree with the statement in *Arey v. Davis,* 233 Ga. 951, 955 (213 SE2d 837): "All transactions between an attorney and his client are closely scrutinized by the courts, and the attorney's duty in these circumstances is a much higher duty than is required in ordinary business dealings where the parties trade at arms length." In that case the question is whether an attorney who had previously represented a client should, when their interests became adverse, have advised him to seek other

counsel. Here the peculiar contract relationship between the law firm and Lipps left them free at the outset to seek any employment not involved in pending representation. Acceptance of the representation of Todd eight or nine months after the offer had been made to Lipps, and he had either indicated no interest or definitely refused the opportunity, was not a breach of the legal contract between the parties. The fiduciary relationship of the parties must be confined to the subject matter of the contract. *Hardin v. Baynes,* 198 Ga. 683 (2-c) (32 SE2d 384); Grand Isle Campsites, Inc. v. Cheek, 249 S2d 268, 273.

The grant of the summary judgment was not error. *Judgment affirmed. Quillian and Webb, JJ., concur.*