A93A1166. TANTE v. HERRING et al.
(439 SE2d 5)

BIRDSONG, Presiding Judge.

T. Edward Tante IV appeals the grant of summary judgment on liability to Laura K. Herring and Bobby C. Herring in their action against him for legal malpractice. He also alleges that the trial court erred by denying his motion for summary judgment on the Herrings' claims. Appellees filed their own affidavits, affidavits of doctors and

psychologists, affidavits of their expert as to legal malpractice, and depositions — none of which have been refuted by appellant.

Tante was retained as counsel to pursue a claim for Social Security disability benefits because of a blockage of Mrs. Herring's right carotid artery. A favorable award was issued, and both Herrings signed Tante's request for attorney fees.

While Tante pursued the Social Security claim, Tante and Mrs. Herring began an adulterous relationship that continued for approximately two years.

The Herrings sued Tante for legal malpractice, breach of fiduciary duty, and breach of contract. They alleged that both Herrings had an attorney-client relationship with Tante, that Tante took advantage of information in Mrs. Herring's confidential medical and psychological reports about her impaired emotional and mental functioning, that Tante took advantage of Mrs. Herring's impaired intellectual functioning, depression and anxiety to convince her to have an affair, and that as a result of this affair Mrs. Herring suffered physical and mental harm. The Herrings allege that Tante infected Mrs. Herring with two strains of venereal disease with which she unknowingly infected Mr. Herring. Their complaint also alleged that Tante violated certain rules and standards of the State Bar of Georgia, that he breached the standard of care owed clients by attorneys, that he violated his fiduciary duties to the Herrings, that he breached his contract with them, and that the Herrings were damaged thereby. The complaint sought compensatory damages, punitive damages, and litigation expenses, including attorney fees.

Tante contends the trial court erred by granting summary judgment on liability to the Herrings and by denying his motion for summary judgment. Tante admits his extramarital relationship with Mrs. Herring, but denies he committed legal malpractice, denies any liability to the Herrings and specifically denies that he had an attorney-client relationship with Mr. Herring. On appeal he further contends the statute of limitation bars this action. *Held:*

1. While Tante admits an attorney-client relationship with Mrs. Herring, he denies that Mr. Herring was his client, and asserts that he represented only Mrs. Herring in her claim with the Social Security Administration. Thus, he contends he cannot be liable to Mr. Herring for legal malpractice because there could be no attorney-client relationship with Mr. Herring. See *Horn v. Smith & Meroney, P.C.*, 194 Ga. App. 298 (390 SE2d 272).

The evidence shows, however, that both Mr. and Mrs. Herring attended meetings with Tante, that Mrs. Herring signed a contract prepared by Tante employing his firm as her "attorneys to present and prosecute for [her] and any applicable family members a claim for Social Security benefits." Moreover, a fee request, again prepared

by Tante, and signed by both Mr. and Mrs. Herring stated, in part, "we have reviewed the request for approval of the fee submitted by our attorney, T. Edward Tante, IV, in the above case. After carefully considering the same and taking into account the work Mr. Tante did for us, we respectfully request that you approve Mr. Tante's request for $1,500 attorney fees, as we believe the same to be justified and reasonable."

Under these circumstances, although the claim prosecuted was for Mrs. Herring's disabilities, the documentary evidence prepared by Tante shows that he was employed to represent both Mr. and Mrs. Herring, and that he performed legal services for both. An attorney-client relationship may be created expressly by contract or inferred from the parties' conduct. *Huddleston v. State*, 259 Ga. 45, 46-47 (376 SE2d 683). However, contractual formalities are not essential to the creation of such relationships. *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229 (355 SE2d 453). Although generally the test of employment is the fee, the basic question in regard to the formation of an attorney-client relationship is whether it has been sufficiently established that advice or assistance is both sought and received in matters pertinent to the attorney's profession. *Huddleston*, supra at 46-47. Compare *Legacy Homes v. Cole*, 205 Ga. App. 34, 35 (421 SE2d 127). Considering the evidence of record, the trial court did not err by concluding there was an attorney-client relationship between Tante and Mr. Herring. *Huddleston*, supra; *Horn*, supra.

2. Next, Tante contends he cannot be liable for legal malpractice as a matter of law because he performed in a manner consistent with the standard of care ordinarily exercised by lawyers generally under similar conditions and like circumstances, and he was successful. In our view, however, this argument takes a too narrow view of attorneys' obligations to their clients. A successful monetary result on a claim does not mean that a lawyer cannot, per se, otherwise breach his professional responsibilities to his clients.

Although it is customary for malpractice actions to be brought after a client's cause ends unsatisfactorily, an unsatisfactory result is not an element of a claim for legal malpractice. The elements of such action are employment of an attorney; failure of the attorney to exercise ordinary care, skill and diligence; and damages proximately caused by that failure. *Guillebeau*, supra; *Rogers v. Norvell*, 174 Ga. App. 453, 457 (330 SE2d 392). "The initial requirement for establishing liability is that there be a duty. This arises from the attorney-client relationship itself. [Cits.] Once this relationship was shown to exist, a duty devolved upon [Tante], as [the Herrings'] attorney, to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Hughes v. Malone*, 146 Ga. App. 341,

344 (247 SE2d 107). "[M]embers of all professions must exercise the degree of skill, prudence, and diligence which ordinary members of the particular profession commonly possess and exercise" (Ga. Law of Damages, p. 689, § 36-19), and Tante was "bound to the *highest honor and integrity*, to the *utmost* good faith" (*Cox v. Sullivan*, 7 Ga. 144, 147 (50 AD 386)) in his representation of the Herrings.

The Herrings supported their allegations with the affidavit of an attorney, which contained sufficient foundation, from which the trial court could determine the attorney was a legal malpractice expert. See *McDonald v. Glynn-Brunswick Mem. Hosp.*, 204 Ga. App. 7 (418 SE2d 393). This expert, who indeed is generally recognized as an authority in this area of law, stated he had reviewed documents pertinent to the complaint, that in his expert opinion an attorney-client relationship was established between the Herrings and Tante, that Tante was legally, professionally and ethically responsible for his representations of the Herrings, and that a fiduciary relationship was created between Tante and the Herrings. He further stated he was familiar with the standard of care expected of attorneys in this state and that Tante's representation of the Herrings was substandard and deviated from and breached the degree of care and skill required of attorneys in this state, generally, under similar conditions and like circumstances, and proximately caused damages to the Herrings. He further stated that because of his attorney-client and fiduciary relationships with the Herrings, Tante had a duty and obligation to represent the Herrings' interests faithfully, honestly, and consistently; to protect their rights, interests, and properties; and to advise them promptly, fully, adequately, and honestly. The affidavit further stated that Tante's "use of, or complete disregard of, the confidential psychological information and other privileged information gained as a direct result of his legal representation of [the Herrings] to induce Mrs. Herring into entering into an adulterous relationship constitutes legal malpractice, a breach of his contract of employment with [the Herrings], and a breach of his fiduciary relationship with [the Herrings]. Moreover, if during the course of this relationship, [Tante] knowingly transmitted a venereal disease to Mrs. Herring as alleged who in turn transmitted same to Mr. Herring as alleged, [Tante's] conduct in so doing constitutes an additional breach of his fiduciary duties to Mr. and Mrs. Herring."

We note that at the same time Tante admittedly was having a sexual relationship with Mrs. Herring, he was representing to the Social Security Administration that Mrs. Herring was so mentally disabled that she was incapable of working. Under the circumstances, Tante's sexual misconduct with his client was potentially damaging to the Social Security claim. Moreover, Tante, particularly as an attorney, is charged with the knowledge (OCGA § 1-3-6) that engaging in

a sexual relationship with Mrs. Herring while each was married to another, constituted the crime of adultery. OCGA § 16-6-19. See OCGA § 16-2-20.

In addition, Mrs. Herring's affidavit stated that Tante received her psychological evaluations which stated she had organic brain damage, was depressed and anxious with feelings of insecurity, inadequacy, and inferiority, and suffered from impairment of judgment and difficulty with interpersonal relationships. Mrs. Herring's affidavit also stated that Tante was given medical reports showing she had a severe decrease in her desire for sex. She further stated that shortly after their first meeting, Tante advised her that she would be less depressed and would feel better if she would enter into a sexual relationship with him. Tante has not rebutted these allegations.

Further, Mrs. Herring's affidavit stated that she has incurred and continues to incur considerable expense for psychological therapy. These statements are supported by affidavits from several mental health care providers and Mr. Herring.

A physician's affidavit stated that Mrs. Herring suffered from mild dementia, amnestic syndrome, short term memory dysfunction, and that she was physically and mentally disabled, and also stated this information was provided Tante. A psychologist stated that Mrs. Herring suffered from organic brain syndrome, and another psychologist's affidavit stated he treated Mrs. Herring after her sexual relationship with Tante and that her primary problem was obsession with the extramarital relationship with her attorney, and in his opinion, at the time of the sexual relationship Mrs. Herring's impulse control was diminished and her judgment was impaired. Further, he opined that the relationship with Tante was destructive to Mrs. Herring's emotional health and the health of her marriage. Also, a clinical psychologist's affidavit stated that Mrs. Herring was vulnerable to Tante's advances because of her emotional and mental condition caused by the occlusion of her right carotid artery, that she had inadequate control to resist Tante's advances, that she was not fully capable of exercising independent judgment, and that the relationship with Tante was damaging to the Herring family and emotionally devastating to Mrs. Herring. Finally, Mr. Herring's affidavit stated that the sexual relationship between his attorney and his wife damaged the marriage and his family, and that he contracted two venereal diseases from his wife.

Thus, particularly but not exclusively considering Tante's professionally gained knowledge of his client's, Mrs. Herring's, medical condition and mental status, we agree with the Herrings' expert that Tante had the duty not to induce and engage in sexual intercourse with his client, and particularly a client who was the spouse of his other client. Additionally, the record also shows that Tante violated his duty to both his clients by misusing information concerning Mrs.

Herring's medical and psychological conditions to induce her to have a sexual relationship with him.

Although Tante is presumed to have performed legal services for the Herrings in an ordinary skillful manner (*Mims v. Wardlaw*, 176 Ga. App. 891 (338 SE2d 866)), his admitted conduct and the uncontradicted evidence submitted by the Herrings fully overcame this presumption. Moreover, while Tante may have been successful in securing an award from the Social Security Administration, the record establishes that as a result of his actions both of his clients were otherwise severely damaged because of his representation of them.

3. The record also supports the grant of summary judgment on the Herrings' claim that Tante breached his fiduciary duties. Tante had a fiduciary relationship with the Herrings. OCGA § 23-2-58; *Jerry Lipps, Inc. v. Postell*, 139 Ga. App. 595 (229 SE2d 78). Thus, his first duty was loyalty to them and he was obligated not to put himself in a position where he had interests that were antagonistic to his clients'. *Arthur v. Ga. Cotton Co.*, 22 Ga. App. 431 (96 SE 232). He could pursue no interest or take any act adverse to his clients' interests or incompatible with applying his best skill, zeal, and diligence in representing them. *Clyde Chester Realty Co. v. Stansell*, 151 Ga. App. 357, 359 (259 SE2d 639). Because of this fiduciary relationship, Tante also had a duty to exercise the utmost good faith and loyalty to his clients, and to act solely for their benefit. *Dolvin Realty Co. v. Holley*, 203 Ga. 618, 622 (48 SE2d 109). As their attorney, Tante occupied a position of the highest trust and confidence, and was not allowed to promote his own interests to the injury of the Herrings. *Morris v. Johnstone*, 172 Ga. 598, 604-605 (158 SE 308). He was not allowed to profit for himself from the relationship or from the sensitive knowledge obtained therein to the injury of his client. *Koch v. Cochran*, 251 Ga. 559, 560 (307 SE2d 918). We conclude that Tante violated the fiduciary duties he owed his clients. Tante used sensitive information available to him solely because of his attorney-client relationship with the Herrings to his personal advantage and the Herrings' disadvantage. Moreover, the evidence shows Tante engaged in an extramarital sexual relationship with one client who was the wife of his other client in the same cause, and allegedly infected his other client with venereal disease. Thus, Tante assumed an interest antagonistic to his clients and their cause, and contrary to his role as their trusted attorney. The trial court did not err by finding a breach of Tante's fiduciary relationship and that the Herrings were entitled to recover for that breach. OCGA § 51-1-6; see generally OCGA § 9-11-56.

4. Although the Herrings' legal expert astutely opined that Tante's conduct constituted legal malpractice because of his deviation from the prescribed legal standards in Georgia by violating the Rules

and Regulations of the Organization and Government of the State Bar of Georgia, Bar Rule 4-102, Standard 28 (knowingly using a confidence or secret of his client to the disadvantage of the client and by using a confidence or secret of his client for Tante's advantage); Standard 30 (continuing his employment without notice to and the consent of the Herrings after his professional judgment on behalf of his clients was affected by his personal interests); Standard 45 (e) (knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule); and DR 4-401 (B) (using confidence or secrets of his client to the disadvantage of his client and to the advantage of himself without the consent of the Herrings after full disclosure), our Supreme Court recently foreclosed a claim of legal malpractice based upon these grounds. "[W]hile the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof." *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859). However, conduct which violates the Code of Professional Responsibility may, in appropriate circumstances, also provide a basis for a claim for legal malpractice. The correct statement of the law from the cases Tante relies upon is that *"standing alone"* a violation of a bar standard will not support a legal malpractice claim. See *East River Savings Bank v. Steele*, 169 Ga. App. 9, 11 (311 SE2d 189). In this case, Tante's conduct, when measured against the standards stated in the affidavits of the Herrings' expert, was sufficient to state a claim of legal malpractice. Compare *Roberts v. Langdale*, 185 Ga. App. 122 (363 SE2d 591). Moreover, it cannot be said that an attorney, with impunity, is authorized to engage in sexual relations with his clients. See *In the Matter of Lewis*, 262 Ga. 37 (415 SE2d 173).

5. Finally, Tante contends the Herrings' claim is barred by the statute of limitation. This defense was stated in Tante's answer, but he did not seek a ruling on this defense in the trial court before the trial court's grant of summary judgment to the Herrings. It is now too late to raise this defense. "A defendant may not avail himself of an affirmative defense which he failed to properly present." *Searcy v. Godwin*, 129 Ga. App. 827, 829 (201 SE2d 670). By failing to assert this defense until after the Herrings received summary judgment on liability, he is in the same position as if the Herrings had received a judgment on the merits. *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601, 606 (203 SE2d 173). Thus, Tante has waived any defense of the statute of limitation he might have had.

Accordingly, we find that the trial court did not err as enumerated. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

*Judgment affirmed. Pope, C. J., and Andrews, J., concur.*

## ON MOTION FOR RECONSIDERATION.

Tante's motion for reconsideration contends the trial court's grant of summary judgment on liability must be reversed because a grant of summary judgment to the plaintiffs cannot be based upon expert opinion evidence. *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45); *Ginn v. Morgan*, 225 Ga. 192, 193-194 (167 SE2d 393). Nevertheless, our Supreme Court has adopted the rule that "objections to expert opinion affidavits will not be entertained for the first time on appeal where such affidavits were considered by the trial judge, without objection, in ruling on the motion for summary judgment." *Bell v. Sellers*, 248 Ga. 424, 426 (283 SE2d 877). Consequently, as the record in this appeal shows there was no objection below to considering the expert's affidavits, the trial court did not err in granting summary judgment based on these affidavits, and this objection raised for the first time on appeal provides no basis for reconsideration. *Bell v. Sellers*, supra; *Whitaker v. Trust Co.*, 167 Ga. App. 360, 361 (306 SE2d 329).

Further, as expert opinion evidence was not required to establish a claim for breach of fiduciary duties and Tante did not rebut the Herrings' evidence supporting this claim, this objection in any event would not extend to the grant of summary judgment on the breach of fiduciary claim.

Tante's motion for reconsideration based on the statute of limitation is denied for the reasons stated in Division 5 above.

*Motion for reconsideration denied.*

DECIDED NOVEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 10, 1993 — 

*Denney, Pease, Allison, Kirk & Lomax, John W. Denney*, for appellant.

*Beltran & Associates, Frank J. Beltran, Simone R. Siex*, for appellees.