**MUNFORD, INC., Plaintiff,**

v.

**Dillard MUNFORD; Russell G. Fellows; Winton M. Blount; Herbert J. Dickson; James L. Ferguson; Robert M. Gardiner; Richard K. Leblond; Andrall E. Pearson; S.B. Rymer, Jr.; James M. Carroll; Joseph W. Hardin; Jay E. Rubel; State Street Bank & Trust Company; Provident National Bank; DFA Investment Dimensions Group, Inc.; Shearson Lehman Brothers, Inc., Defendants.**

No. 1:94–cv–348–GET.
Adv. No. 91–6417.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 4, 1994.

Joseph John Burton, Jr., Burton & Anderson, Atlanta, GA, Peyton S. Hawes, Jr., Office of Peyton S. Hawes, Jr., Atlanta, GA, Thomas Willard Rhodes, Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, Atlanta, GA, Robert Matthew Martin, Jones Day Reavis & Pogue, Atlanta, GA, David E. Bennett, phv, Thomas L. O'Brien, phv, Sheryl H. Kuzma, phv, Vedder Price Kaufman & Kammholz, Chicago, IL, and Kenneth Lee Millwood, Nelson Mullins Riley & Scarborough, Atlanta, GA, for defendants.

Susan A. Cahoon, Alfred S. Lurey, Dennis S. Meir, and Michael Dean Langford, Kilpatrick & Cody, Atlanta, GA, Stephen T. Jacobs, phv, and Kathy Donius, phv, Reinhart Boerner Van Deuren, Norris & Rieselbach, Milwaukee, WI, for debtor/plaintiffs.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter is presently before the court for de novo review pursuant to Rule 9033, 11 U.S.C., of proposed findings of fact and conclusions of law of the bankruptcy court [bankr. docket no. 610] recommending that the motion for summary judgment by defendant Shearson Lehman Brothers, Inc. be granted.

### Introduction

This adversary proceeding arises out of the bankruptcy of plaintiff Munford, Inc. (plaintiff or Munford), *In re Munford, Inc.*, A90–78–SWC. Munford seeks to recover against Shearson, Munford's former financial advisor, for failing to fully advise and for negligently providing advice regarding a proposed leveraged-buy-out of Munford. The above defendants have filed motions for summary judgment in this adversary proceeding upon which the bankruptcy court has issued proposed findings of fact and conclusions of law. The bankruptcy court recommends that the defendant's summary judgment motion be granted.

### Standard of Review

The bankruptcy court issued its findings of fact and conclusions of law in this matter pursuant to 28 U.S.C. § 157(c)(1). Although one or more parties to this litigation filed appeals to this court of the bankruptcy court's findings of fact and conclusions of law, the parties are now in agreement and have represented to the court that this matter is appropriately before the court for review under Bankr.Rule 9033, 11 U.S.C. Under that rule, the "district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Rule 9033(d), 11 U.S.C.

### Background

Pursuant to the above standard of review and the standard for evaluating summary judgment motions set forth below, the court finds the following facts for the purposes of this order only.

Prior to November 29, 1988, plaintiff Munford was a publicly held Georgia corporation operating three primary businesses: (1) Majik Market convenience stores, (2) World Bazaar retail stores and (3) LeeWards Creative Crafts retail stores. Munford also owned a majority stake in United Refrigerated Services, Inc. Munford's principal business was its chain of Majik Market convenience stores.

In August of 1987, Munford's directors retained Shearson Lehman Brothers, Inc. to evaluate the company's future. After conducting a financial review and analysis of Munford, Shearson recommended that a sale of 100% of Munford's commons stock would maximize shareholder value. Also based on its analysis, Shearson further concluded that a leveraged buy-out or leveraged recapitalization would not successfully maximize shareholder value. After reviewing Shearson's report, Munford's directors authorized Shearson to prepare an offering memorandum and to solicit potential purchasers of Munford. Shearson's efforts to find a purchaser for Munford were not successful.

Thereafter, in early 1988, Philip Handy organized a group of investors (hereafter collectively referred to as "the purchasers" or the "new investors") to make a bid to purchase Munford through a leveraged buy-out (LBO). Munford's directors first considered the new investors' proposal at the directors meeting on May 23, 1988. At this meeting, Munford's legal counsel advised the directors of the proposal and of various factors to be considered when evaluating the new investors' offer. A Shearson representative addressed the directors regarding the financing terms of the proposed LBO. Shearson also indicated that it was "favorably impressed" with the new purchasers' access to capital resources. The directors unanimously approved of the proposed purchase of all of Munford's outstanding shares at a price of $18.50 per share and began pursuing a definitive agreement.

At the June 1, 1989 meeting of Munford's directors, Handy presented his plan for financing the LBO. Handy indicated that the purchase would be highly leveraged with as little equity participation by the new investors as possible. To accomplish the LBO,

the new investors formed Alabama Acquisition Corporation (AAC) and Alabama Merger Corporation (AMC). AMC was a wholly owned subsidiary of AAC. Under the plan, AMC would merge with Munford, leaving Munford as the surviving entity.

On August 9, 1988, Munford's directors formally approved the amended merger agreement which reduced the sale price of Munford stock to $17.00 per share. At this meeting, Shearson presented a fairness opinion indicating that such a price was fair to Munford's shareholders. The merger agreement called for AAC and AMC to deposit or cause to be deposited into a trust account with an exchange agent sufficient cash to purchase Munford's outstanding shares of common stock for $17.00 per share. The agreement called for the exchange agent, Citizens & Southern Trust Co. (C & S Trust), to be given irrevocable authority to make cash payments to shareholders as called for in the agreement.

The LBO was to be funded primarily by a line of credit issued by Citicorp Bank (Citicorp) in the amount of $54,000,000 to, and secured by the assets of, Munford. On November 29, 1988, AAC acquired Munford pursuant to the merger agreement for approximately $90,604,000. On that date, Handy, as chairman of Munford, withdrew some $53,244,000 from Munford's Citicorp credit line. Handy directed that approximately $26,580,000 of the loan proceeds be transferred to Munford's account # 00168005 at Citizen & Southern National Bank (C & S Bank). Munford then transferred $61,811,000 from its C & S Bank account to C & S Trust, the exchange agent for the share purchase. All outstanding Munford common stock shares (except for 291,177 shares owned by AAC prior to the LBO), approximately 3,900,000, were tendered to C & S Trust in exchange for $17.00 per share. Munford also paid from its C & S Bank account certain creditor claims and closing costs associated with the LBO. Munford used the balance of the Citicorp line of credit funds, approximately $1,556,000, to pay the claims of various Munford creditors and other loan and closing costs.

Munford filed for bankruptcy protection on January 2, 1990. Munford, as debtor in possession acting with the power of a trustee under 11 U.S.C. § 1107(a), filed its complaint for the benefit of Munford's estate and its unsecured creditors on June 17, 1991; Munford's amended and restated complaint was filed on July 23, 1992. Munford's complaint states three counts against the Shearson. In Count VI, Munford asserts that Shearson is liable (1) in tort for negligence and (2) for breach of contract for failing to provide sound advice regarding the LBO proposal. In Count VIII, Munford asserts that the $250,000 fee paid to Shearson by defendant Munford for its investment counseling services was a fraudulent conveyance under O.C.G.A. § 18–2–22(3). In Count IX, Munford asserts that Shearson is liable for aiding and abetting the former officers and directors of Munford in their breach of fiduciary duty owed to Munford.

Shearson filed a motion for summary judgment [bankr. docket no. 512]. By opinion dated April 4, 1994 [bankr. docket no. 610], the bankruptcy court recommended that Shearson's motion for summary judgment be granted as to all remaining claims. The plaintiff has filed objections to the bankruptcy court's conclusion that Shearson is entitled to summary judgment on Count IX and as to the negligence claim of Count VI. The plaintiff does not object to the bankruptcy court's recommendation that Shearson be granted summary judgment as to Count VIII or as to the breach of contract claim under Count VI.

On July 26, 1994, this court heard oral arguments on the plaintiff's objections to the bankruptcy court's opinion.

## Discussion

### I. Summary Judgment Standard.

Bankruptcy Rule 7056 provides that "Rule 56 F.R.C.P. applies in adversary proceedings." Rule 7056, 11 U.S.C. Rule 56(c), Fed. R.Civ.P., defines the standard for summary judgment: courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S.

317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the Supreme Court interpreted Rule 56(c) to require the moving party to "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* 477 U.S. at 325, 106 S.Ct. at 2554; *see also United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991).

Once the movant has met this burden, the burden on summary judgment shifts to the nonmoving party who must establish that there is a genuine material issue of fact remaining for trial. *Celotex* 477 U.S. at 325, 106 S.Ct. at 2554. The nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.* The Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), "that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." In making a determination of whether there is a material issue of fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513; *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987).

However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlled substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof and (2) the summary judgment movant has made a plausible showing of the absence of evidence on the necessary element. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

## II. Application of Standard.

**A. Count VI.** In Count VI, Munford asserts that Shearson is liable in tort and in contract for allegedly not using reasonable care in advising Munford on the LBO transaction. In its opinion, the bankruptcy court concluded that Munford's contract claim is barred by an indemnity provision in the engagement letter which the parties agree sets forth Shearson's contractual obligations to Munford. Since Munford has not objected to this portion of the bankruptcy court's opinion, this court will not review the bankruptcy court's conclusion in this regard.

The plaintiff does object to the bankruptcy court's determination that Shearson is entitled to summary judgment on the tort claim. Munford asserts that Shearson tortiously breached its duty to provide sound professional financial advice regarding the LBO. As the bankruptcy court stated, "[i]n becoming a financial advisor to Munford, Shearson assumed an obligation to exercise a reasonable degree of care, skill, and ability such as is ordinarily exercised under similar conditions and like surrounding circumstances by similar professionals. Such obligations is treated as a duty apart from [Shearson's] expressed contractual obligations." (Opinion of bankruptcy court [bankr. docket no. 610], April 4, 1994 at p. 9.)

The bankruptcy court correctly recognized that the standard of care to be exercised by a professional is to be determined based on expert testimony. The bankruptcy court found, and Munford admits, that Munford has not sought to produce such expert testimony. (P. objections [bankr. docket no. 626] to bankr. opinion at p. 13.) The bankruptcy court thus concluded that Munford has failed to come forward with admissible evidence to establish the appropriate professional standard of care against which Shear-

son's conduct should be measured. Accordingly, the bankruptcy court found Shearson's motion for summary judgment to be warranted. (Opinion of bankruptcy court [bankr. docket no. 610] at p. 10–11.)

■ The court finds Munford's objections to the bankruptcy court's opinion in this regard VI to be without merit. In cases alleging professional negligence, "except in clear and palpable cases ..., expert testimony is necessary to establish the parameters of acceptable professional conduct." *Hughes v. Malone*, 146 Ga.App. 341, 345, 247 S.E.2d 107 (1978); *Berman v. Rubin*, 138 Ga.App. 849, 853, 227 S.E.2d 802 (1976). Thus, while simple negligence claims do not require expert testimony, assertions of professional negligence can "be established only by professional or expert testimony." *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 410, 395 S.E.2d 809 (1990). *See also Housing Authority of Savannah v. Greene*, 259 Ga. 435, 436, 383 S.E.2d 867 (1989) (recognizing that "it is generally necessary to admit expert testimony ... in order to establish the degree of skill and care ordinarily employed by the profession").

In regard to Munford's assertion that it is entitled to rely on testimony by Shearson representatives to establish the relevant standard of care, the bankruptcy court expressly found that

> Shearson representatives testified that the analysis of the effects of a hypothetical LBO was within the scope of its contractual obligations under the engagement letter. However, this testimony merely relates to Shearson's contractual duties to Munford. It does not set forth or establish an opinion, expert or otherwise, about a general standard of care to be exercised by professionals similar to Shearson.

(Opinion of bankruptcy court [bankr. docket no. 610] at p. 10.) Munford has neither specifically objected to the bankruptcy's finding that Shearson's testimony failed to establish a standard of professional care nor has it provided any references to specific testimony by Shearson which it considers to have sufficiently stated a standard of care. Accordingly, the court agrees with the bankruptcy court's conclusion that Shearson is entitled to summary judgment as to Count VI.

**B. Count IX.** In Count IX, Munford attempts to state a claim against Shearson for aiding and abetting the officer and director defendants' alleged breach of fiduciary duty to Munford. The bankruptcy court recommended that Shearson's motion for summary judgment as to this count be granted on the grounds that a cause of action for aiding and abetting a breach of fiduciary duty does not exist in Georgia. Munford objects to the bankruptcy court's conclusion on two grounds: first, that the bankruptcy court misconstrued its role in applying Georgia law under the *Erie* doctrine and, second, that the bankruptcy court erroneously determined that, if it were faced with the issue, Georgia courts would reject the creation of such a cause of action.

■ The court finds Munford's assertions of error to be without merit. This court is bound to apply Georgia law when considering to validity of Munford's common-law tort claim. In the absence of state law addressing the issue, the court is "obliged to resolve the issue as the Georgia state courts would." *Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 290 (5th Cir.1976); *Brown v. Courier Herald Pub. Co.*, 700 F.Supp. 534, 536–37 (S.D.Ga.1988). The court is satisfied that the bankruptcy court properly carried out its duty to determine whether or not a Georgia state court would, if faced squarely with the issue, recognize the tort of aiding and abetting a breach of fiduciary duty.

■ The court also finds that the bankruptcy court correctly determined that Georgia law does not recognize the tort of aiding and abetting a breach of fiduciary duty and that a Georgia court faced with the issue would not be likely to create such a cause of action. While the plaintiff cites in its objections numerous instances in which Georgia courts have recognized causes of action for aiding and abetting various torts, this court agrees with the bankruptcy court that such cases are of limited relevance. Fiduciary duties are based on the special relationship existing between two or more parties. *See Tante v. Herring*, 211 Ga.App. 322, 324–25,

439 S.E.2d 5 (1993) (fiduciary duty premised on "confidential relations" defined in O.C.G.A. § 23–2–58). The imposition of aider and abettor liability for breaches of fiduciary duty essentially extends fiduciary obligations beyond the scope of the confidential or special relationship. *See Wieboldt Stores v. Schottenstein,* 1989 WL 99545, 1989 U.S.Dist. LEXIS 10124 (N.D.Ill.1989) (refusing to create cause of action for aiding and abetting breach of fiduciary duty based on: (1) absence of state court authority recognizing cause of action and (2) fact that aider and abettor is not party to the special relationship giving rise to fiduciary duty).

In accordance with the above, the court finds that Munford's objections to the bankruptcy court's conclusions in regard to Count IX are not warranted.

## Summary

Based on the foregoing, the court hereby OVERRULES and DENIES the plaintiff's objections to the bankruptcy court's opinion. This court hereby AFFIRMS and ADOPTS the findings of fact and conclusions of law of the bankruptcy court in all respects.

Defendant Shearson Lehman Brothers's motion for summary judgment [bankr. docket no. 512] is GRANTED. The plaintiff's claims against Shearson stated in Counts VI, VIII and IX are hereby DISMISSED.

SO ORDERED.