S93A0780. GREEN v. GREEN.
(437 SE2d 457)

BENHAM, Justice.

This is an appeal from the denial of a motion to set aside the judgment in a divorce case. Appellant filed the divorce action in DeKalb County while represented by counsel. She subsequently moved to Ohio and her attorney withdrew from the case. In withdrawing, the attorney followed the appropriate procedures, including notifying the court and opposing counsel of appellant's address in Ohio. In January 1992, the case appeared on the trial calendar and notice was published in the legal organ of the county. No effort was made to give appellant actual notice of the appearance of the case on the trial calendar. Although the case was fifteenth on the calendar and the notice specified that all but the first ten cases would be "on call," appellee and his counsel appeared and answered ready. In his

brief in this court, appellee's counsel states that when the trial court was unable to locate the record of the case and advised appellee and his counsel that the case would have to be continued, appellee's counsel went first to the clerk's office and then to the office of the judge who had previously been assigned to hear the case. In the judge's office, the record was located in a desk drawer and was then conveyed to the trial court, which proceeded to hear the case in appellant's absence. The trial court subsequently entered an order (prepared by appellee's counsel) which recited that appellant was "absent without having moved this court for a continuance or otherwise showing legal cause for her absence . . .," awarded appellee custody of the parties' child, and imposed a child support obligation on appellant. Once again represented by counsel, appellant filed a motion to set aside the judgment on the ground that she did not receive adequate notice of the trial. The trial court found that the notice by publication was sufficient and that appellant did not comply with the provision of Uniform Superior Court Rule (USCR) 8.4,[1] and denied the motion to set aside.

We granted appellant's application for discretionary review to consider whether notice by publication was constitutionally sufficient in a case such as this one. However, in keeping with the principle that cases should not be decided on constitutional issues when other issues are dispositive (cf. *Cone v. State*, 184 Ga. 316, 322 (191 SE 250) (1937)), we find it unnecessary to consider the constitutional issue because other principles lead us to reverse the judgment of the trial court.

Notwithstanding the sufficiency of notice by publication, a trial court has discretion, upon considering all the circumstances, to set aside a judgment against a party who pleads lack of notice. *Spyropoulos v. John Linard Estate*, 243 Ga. 518 (255 SE2d 40) (1979). The circumstances of this case include a calendar call which did not require the presence of the parties to this action and extraordinary efforts made by appellee's counsel to bring this case to trial in the absence of the unrepresented opposing party whom appellee's counsel knew to live out of this state.

1. Addressing first the issue of the absence of appellant, we note that the trial court's order denying the motion to set aside and appel-

---

[1] USCR 8.4. Trial Date.

The parties and counsel in the first 10 actions on the published trial calendar shall appear ready for trial on the date specified unless otherwise directed by the assigned judge. Parties in all other actions on the calendar are expected to be ready for trial but may contact the calendar clerk to obtain:

(A) A specific date and time for trial during the trial term specified in the calendar; or

(B) Permission to await the call by the calendar clerk of the action for trial upon reasonable notice to counsel.

lee's argument on appeal both rely on Uniform Superior Court Rule 8.4 and on the special concurrence in *Home Owners Warranty Corp. v. Pinewood Builders*, 188 Ga. App. 324, 326 (373 SE2d 34) (1988). That concurrence states that the rule requires that the parties and counsel in all cases on the calendar be present unless they have made the other arrangements mentioned in the rule. However, the concurring opinion is not binding precedent, and conflicts with the holding of the Court of Appeals in *Fulton v. State of Ga.*, 183 Ga. App. 570 (359 SE2d 726) (1987), that only the first five[2] cases on the published calendar were required to be present. In this case, as in *Fulton*, which we believe to state the better interpretation of USCR 8.4, judgment was entered against a party who was not required by the rule to be present; in this case, as in *Fulton*, the judgment should have been set aside. We do not suggest by this holding that counsel and parties whose cases are not in the first ten listed on the calendar have no responsibility to make arrangements with the court to postpone their case or to be notified if their case is reached. However, under the particular circumstances of this case, the failure of the unrepresented appellant to make such arrangements was not sufficient to warrant the extreme sanction of conducting the trial in her absence and awarding appellee child custody and child support without any opposition.

2. In addition to the purely legal question regarding presence at calendar call, the role appellee's counsel played in procuring the judgment must be examined. There can be no serious question that appellee's counsel was aware that appellant was not represented by counsel since the record reflects that he was served with notice of appellant's counsel's withdrawal from representation. That same notice makes it clear that appellee's counsel was aware of appellant's location and address. Yet, not only did counsel make no effort to inform appellant of the calendar call on which their case occupied an "on call" status, he has stated to this court that he pursued the matter through the office of the clerk of court and on into the desk drawer of a law clerk who had previously worked on the case.

> In recent years, on the federal and state level, courts throughout this country have sought to encourage professionalism among lawyers and alternative dispute resolution among citizens. In furtherance of the former of these goals, several years ago this court established the Chief Justice's Commission on Professionalism in an attempt to maintain in some instances and establish in others, a sense of civility and courtesy among lawyers. In drawing the distinction between

---

[2] The rule was amended in 1989 to raise the number of cases for which parties and counsel must be present from five to ten.

professionalism and ethics, Chief Justice Clarke has often said that "ethics is that which is required and professionalism is that which is expected."

On one hand, the practice of law is dependent to a great extent on lawyers having respect for each other, honoring their promises, cooperating with others, and according each other a high degree of civility. On the other hand, lay persons sincerely believe that when a justiciable issue arises, if they so desire they will be accorded their "day in court." These expectations on the part of lawyers and lay persons are reasonable and are fully contemplated by our system of jurisprudence. Therefore, when these expectations are not fulfilled, there is understandable discontent with our system of justice. If the bar is to maintain the respect of the community, lawyers must be willing to act out of a spirit of cooperation and civility and not wholly out of a sense of blind and unbridled advocacy.

During oral argument in the case sub judice, the question was posed by the bench as to why the final decree was taken without notice to the adverse party and prior to the scheduled hearing date. Appellee's lawyer responded by saying, in part, that the law allowed the procedure he utilized and that he had every right to avail himself of the procedure. What is disturbing to me is that many lawyers fail to realize that the law and the Code of Professional Responsibility set minimum levels of reasonable conduct. As members of an honorable profession, we must be willing to conduct our business in a manner consistent with higher standards embodied in the Ethical Considerations and aspirational goals embodied in the professionalism movement.

*Evanoff v. Evanoff*, 262 Ga. 303, 304-305 (418 SE2d 62) (1992) (Benham, J., concurring). In the present case, appellee's counsel has taken a position equivalent to that of appellee's counsel in *Evanoff*, and with equivalent effect. In the present case, however, there is case law which will permit the setting aside of the judgment as an exercise of discretion (*Spyropoulos*, supra), and there is the caution in *Evanoff* that the courts will not condone a refusal "to act out of a spirit of cooperation and civility and not wholly out of a sense of blind and unbridled advocacy." Id. at 304. That spirit of cooperation and civility, when taken together with the notions of fundamental fairness that lie at the heart of the principle of due process of law, requires that attorneys, as officers of the court, make a good faith effort to

ensure that all parties[3] to a controversy have a full and fair opportunity to be heard.[4] Such an effort may entail, as is already the customary practice of many attorneys, counsel assuming the burden of notifying by mail any unrepresented opposing party when their case appears on a trial calendar. No such effort was made in this case.

Given all the circumstances of this case, and especially the lengths to which appellee's counsel went to ensure that this case was tried in the absence of appellant, we hold that the proper exercise of the trial court's discretion established in *Spyropoulos*, supra, required that the judgment be set aside. The trial court's denial of appellant's motion to set aside was, therefore, an abuse of that discretion.

*Judgment reversed. All the Justices concur, except Sears-Collins, J., who concurs specially, and Fletcher, J., who concurs in the judgment only.*

SEARS-COLLINS, Justice, concurring specially.

I disagree with both of the reasons given by the majority for reversing the judgment of the trial court. However, I concur in the judgment because I would reverse on the ground that notice of a nonresident, pro se litigant's trial date by publication of a trial calendar in a county's legal journal is insufficient to satisfy due process.

1. First, I disagree with the majority's interpretation of Uniform Superior Court Rule (USCR) 8.4 and its holding that the "calendar call . . . did not require the presence of the parties to this action." Majority opinion at 552. USCR 8.4 provides that

> parties and counsel in the first 10 actions on the published trial calendar shall appear ready for trial on the date specified unless otherwise directed by the assigned judge. Parties in all other actions on the calendar are expected to be ready for trial but may contact the calendar clerk to obtain: (A) A specific date and time for trial during the trial term specified in the calendar; or (B) Permission to await the call by the calendar clerk of the action for trial upon reasonable notice to counsel.

---

[3] We note, as was explained in an amicus curiae brief filed by the Family Law Sections of the State Bar of Georgia and the Atlanta Bar Association, that there was another unrepresented party whose interests were vitally affected by this action: the child of the parties. That circumstance makes it even more urgent that all sides of this controversy be fairly presented to the trial court before a decision is made which will affect the lives of all the parties involved.

[4] We do not suggest here that attorneys are expected to make the interests of their clients subservient to those of an opposing party, represented or unrepresented, or that attorneys must endure, and cause their clients to suffer from, abuses of the judicial process for the purpose of delay. No such issue is involved in this case.

With regard to cases not among the first ten on the calendar, the rule requires that parties and counsel be ready for trial. The rule does not specifically mention the duty of the parties and counsel in those cases regarding appearance but provides they may contact the calendar clerk, as opposed to the judge, to make one of two arrangements regarding their case. These arrangements are clearly designed to substitute for the parties' appearance, and logic dictates that, if one of the two substitutes is not arranged, then the parties and counsel must appear. This scheme enables a trial court to conduct its trial calendars in an orderly and expeditious fashion. If the parties and counsel who have not made one of the two arrangements do not have to appear, as under the majority's interpretation, then there is the potential that parties and counsel may disregard the rule with impunity, forcing a trial court to spend time locating parties and counsel if other cases do not proceed to trial.

Furthermore, contrary to the majority's statement, *Home Owners Warranty Corp. v. Pinewood Builders*, 188 Ga. App. 324, 326 (373 SE2d 34) (1988), and *Fulton v. State of Ga.*, 183 Ga. App. 570, 572 (359 SE2d 726) (1987), are not in conflict and both stand for the proposition that the correct interpretation of USCR 8.4 is that the parties and counsel are required to be present unless one of the arrangements specified in (A) or (B) is made. The statement in *Fulton* to the effect that the rule required the presence of the parties and counsel in only the first five cases (the rule now requires presence in the first ten cases) must be read in the context of that case, specifically, that the appellant's attorney had complied with (A) and (B) and thus was not required to be present. Moreover, the same judge authored the special concurrence in *Home Owners* and the opinion in *Fulton*, and in *Home Owners* cautioned that the *Fulton* opinion should not be read out of context so as to stand for the proposition now adopted by the majority.

2. The majority also reverses the appellee's judgment because his attorney, by several actions, including his failure to notify the appellant of the trial date, failed to meet the professionalism requirement that attorneys " 'act out of a spirit of cooperation and civility and not wholly out of a sense of blind and unbridled advocacy.' " Majority opinion at p. 554. Although I applaud the efforts of Chief Justice Clarke and the Chief Justice's Commission on Professionalism to encourage a spirit of civility and courtesy among lawyers, and although I agree that the better practice would have been for the appellee's attorney to attempt to contact the appellant (particularly because this case involved a child custody dispute), I disagree with the majority's reliance on professionalism to reverse the appellee's judgment.

(a) First, the majority's reliance on professionalism to vacate a judgment infringes upon, if not violates, both the appellee's and the

appellee's lawyer's rights to due process. No notice was given to the appellee or to the appellee's attorney that anyone was contending the appellee's attorney's conduct violated professionalism standards, and no hearing has been conducted giving the appellee and his attorney a chance to address this issue. Moreover, the State Bar Rules provide that professionalism standards are "non-mandatory" and "aspirational." State Bar Rule 9-101. That being so, it can hardly be concluded that a litigant has notice that non-mandatory and aspirational standards will be made mandatory and used to set aside his or her judgment. This lack of notice, ironically, has denied the appellee and the appellee's attorney the right to address the interplay between an attorney's duty of professionalism and an attorney's duty to zealously represent his or her client, an issue that I believe the majority opinion inadequately addresses. Majority opinion at p. 555, fn. 4. With notice, the appellee and the appellee's attorney might have advanced reasons why the appellee's attorney did not violate professionalism standards but instead properly engaged in the zealous representation of the appellee's interests.

(b) Moreover, the majority's holding directly contradicts this Court's holding in *Stevens v. Thomas*, 257 Ga. 645 (1) (361 SE2d 800) (1987). In that case, the trial court had imposed sanctions against the clients of an attorney based on the attorney's violation of two Directory Rules of the State Bar Rules. Id. at 646. The clients appealed, contending that there was no basis for sanctions against them because, as non-lawyers, they were not subject to the disciplinary rules. Id. at 647-648. We agreed, holding that a client is not subject to sanctions for the infractions of disciplinary rules by the client's attorney. Id. at 648. In this case, the majority has set aside the appellee's judgment based upon its finding that his attorney violated professionalism standards. This holding, in substance, imposes sanctions against a client as a penalty for his attorney's professionalism violations, and is thus directly contrary to the rule of *Stevens v. Thomas*. In addition, the majority's holding conflicts with our decision in *Davis v. Findley*, 262 Ga. 612 (422 SE2d 859) (1992), in which we held that a violation of the Code of Professional Responsibility does not give rise to a cause of action for damages against an attorney.

(c) Furthermore, our holdings in *Stevens* and *Davis* are consistent with the position taken by the American Bar Association (ABA) in the Model Rules of Professional Conduct, which in 1983 superseded the former ABA Model Code of Professional Responsibility. The ABA has provided that

> [v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance

to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Model Rules of Professional Conduct, 1992 ed., pp. 8-9.

(d) Finally, the majority has begun the descent of the slippery slope of legislating civility and courtesy. In the future, this Court no doubt will have to classify some professionalism standards as more important than others, some transgressions as more unprofessional than others, and some standards as appropriate weapons in the litigation arena and others only as guides for regulating conduct through our attorney disciplinary agencies. These problems illustrate why this Court should not permit its distaste for lawyers who may not be exercising common sense, maturity, and civility to blind it to the problems of legislating such conduct.

(e) For the foregoing reasons, I would not reverse the trial court's judgment based on a violation of professionalism standards.

3. However, I would reverse the judgment because I believe that the trial court's failure to send notice of the trial to the appellant's address in Ohio, which was on file with the court, violated due process.

To begin, I note that a trial court has a duty to notify litigants of their trial dates. See OCGA § 9-11-40 (c); *Vaughan v. Car Tapes, Inc.*, 135 Ga. App. 178, 179 (217 SE2d 436) (1975).[5] In this regard,

[w]henever notice is required to be given in a judicial . . . proceeding, due process requires that it be such notice as is reasonably calculated, under all the circumstances, to enable the interested parties to protect their rights. See *Mullane v. Central Hanover Bank &c. Co.*, 339 U. S. 306, 314 (70 SC 652, 94 LE 865) (1949).

---

[5] This Court has held that notice by publication in the Fulton County Daily Report is sufficient to satisfy the notice requirement of § 9-11-40 (c), *Spyropoulos v. John Linard Estate*, 243 Ga. 518 (255 SE2d 40) (1979), but that case did not raise any due process concerns regarding notice by publication.

*Hollis v. Tanner*, 177 Ga. App. 759, 761 (341 SE2d 290) (1986). Accord *Allen v. Bd. of Tax Assessors*, 247 Ga. 568 (277 SE2d 660) (1981), where this Court applied the principles of *Mullane*, 339 U. S., in determining whether notice of hearings by mail pursuant to OCGA § 9-11-5 (b) satisfies due process.[6] Further, in assessing the type of notice that due process requires, "due process" is " 'flexible and calls for such procedural protections as the particular situation demands,' " *Mathews v. Eldridge*, 424 U. S. 319, 334 (96 SC 893, 47 LE2d 18) (1976), and due regard must be given to the particularities and practicalities of each case and to the effect the different types of notice may have on state interests, see *Mullane*, 339 U. S. at 314-315; *Tulsa Professional Collection Svcs. v. Pope*, 485 U. S. 478, 489 (108 SC 1340, 99 LE2d 565) (1988).

Typically, notice by publication of a trial calendar would satisfy due process requirements, because in a typical case a litigant has a lawyer who is aware of the pendency of the case, who is aware of the local legal journal, and who subscribes to that journal to satisfy his or her duty to keep apprised of the trial date in the case. Thus, the publishing of the trial calendar in such an organ is reasonably certain to inform litigants that their case is scheduled for trial. Moreover, requiring a lawyer to subscribe to a county's legal journal is a small burden when compared with the burden that would be placed on the courts through a requirement that they mail notice of trial dates on all cases to the attorneys or parties.

Under the circumstances of this case, however, notice by publication was constitutionally insufficient. The appellant was a resident of Ohio and was not represented by counsel. Although she did have a duty to keep advised of the progress of her case, it is fiction to maintain that a pro se litigant from another state is even aware of the existence of a Georgia county's local legal journal, here the Decatur-DeKalb News/Era. Moreover, to require that litigant to subscribe to a local legal journal and to peruse it for her trial date is a costly and burdensome responsibility. In contrast to this burden, the trial court had the appellant's home address on record, knew that the appellant was unrepresented, and could have easily mailed her notice of her trial date. In this regard, notice by mail "is an inexpensive and efficient mechanism that is reasonably calculated" to provide notice. *Tulsa*, 485 U. S. at 490. Balancing all of these considerations points to the conclusion that notice by publication violated the appellant's due process rights.

The case of *Brown v. C & S Nat. Bank*, 245 Ga. 515 (265 SE2d

---

[6] Although *Mullane* dealt with the notice of the pendency of an action, and this case concerns notice of an event occurring during a pending action, the principles of *Mullane* must apply with equal force or else the notice required is illusory only.

791) (1980), provides further support for this proposition. In that case this Court held that publishing a trial calendar with the case name on it but without the attorney's name on it did not meet the trial court's duty to notify the parties of the trial date because an attorney would search for the name of counsel and not the name of the case. Id. at 518. The Court did not hold that the published notice without the attorney's name violated due process, but the essence of the holding was that this method of notice was not reasonably certain to apprise the parties of their trial date based on the attorney's method of searching the published calendar. Id. at 518. If it is too much to expect an attorney to search for his or her client's name on a published calendar, then it is likewise too much to expect a nonresident, pro se litigant either to discover the existence of a legal journal that most lay persons likely do not know exists, or, if the litigant did know it existed, to undertake the expense of subscribing to it for his or her sole case.

For the reasons given above, I conclude that, under the circumstances of this case, notice by publication violated due process. Anything to the contrary in *Carson v. Morris*, 164 Ga. App. 732 (297 SE2d 513) (1982), should be overruled.

4. Finally, because the appellant did not receive notice, I would hold the trial court erred in denying her motion to set aside. See *Brown*, supra, 245 Ga. at 518-519; *Johnson v. Mayor &c. of Carrollton*, 249 Ga. 173, 175-176 (288 SE2d 565) (1982).

DECIDED NOVEMBER 22, 1993.

*Linwood R. Slayton, Jr.,* for appellant.
*Brad C. Kaplan,* for appellee.
*Davis, Matthews & Quigley, Richard W. Schiffman, Jr., Altman, Kritzer & Levick, Emily S. Bair, Warner, Mayoue & Bates, John C. Mayoue,* amici curiae.