## S94G1071. ALLEN v. LEFKOFF, DUNCAN, GRIMES & DERMER, P.C. et al.

(453 SE2d 719)

SEARS, Justice.

In this legal malpractice case, the Court of Appeals affirmed "the trial court's disallowance of any evidence of, reference to, or jury instruction on the defendant attorneys allegedly having violated certain provisions of the Code of Professional Responsibility." *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 212 Ga. App. 560 (442 SE2d 466) (1994).[1] The Court of Appeals recognized that in *Cambron v. Canal Ins. Co.*, 246 Ga. 147 (269 SE2d 426) (1980), this court "upheld a jury instruction on the Code of Professional Responsibility's proscription of conflicts of interest," *Allen*, 212 Ga. App. at 561, but held that since *Cambron* did not involve an action for legal malpractice, that case was not applicable, and, instead, the issue was controlled adversely to Allen by *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992). We granted the appellant's petition for certiorari to consider this division of the Court of Appeals' decision.

1. As the Court of Appeals recognized, we have held that an alleged violation of the Code of Professional Responsibility (State Bar Rule 3-101 et seq.) or the Standards of Conduct (State Bar Rule 4-102), "*standing alone,* cannot serve as a legal basis" for a legal malpractice action. (Emphasis in original.) *Davis v. Findley*, 262 Ga. at 613 (citing *East River Savings v. Steele*, 169 Ga. App. 9, 11 (311 SE2d 18) (1983)). In other words, as the rule presently exists in Georgia, the duties imposed by the Bar Rules cannot provide the *sole* basis for the standard of care applied in a legal malpractice action. *Davis*, 262 Ga. at 613.[2] This is so because

> while the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof.[3]

---

[1] The Court of Appeals decision adequately describes the relevant facts.

[2] Certainly, a valid claim for legal malpractice will often involve actions which, incidentally, violate duties imposed by the Bar Rules. Concomitantly, conduct which happens to violate the Bar Rules may also provide a basis for a legal malpractice action, just not *solely because* the conduct violates the Bar Rules. In *Davis*, for example, the legal malpractice plaintiff claimed only that the attorney's fee was "illegal and clearly excessive . . . in violation of the Canon of Ethics of the State Bar of Georgia," *Davis*, 262 Ga. at 612, with no other foundation alleged for his claim that the attorney's fee constituted malpractice. This claim was held invalid.

[3] Neither are the State Bar Rules intended to provide a basis for criminal liability. *Marcus v. State*, 249 Ga. 345 (290 SE2d 470) (1982).

Id. at 613.

2. Having said that an attorney's conduct will not support a legal malpractice action solely because the conduct violates the Bar Rules, we now consider the extent of the role the Bar Rules may properly play in such an action.

(a) In a legal malpractice action, the plaintiff must establish three elements: "(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff." *Rogers v. Norvell*, 174 Ga. App. 453, 457 (330 SE2d 392) (1985); *Tante v. Herring*, 264 Ga. 694 (453 SE2d 686) (1994). With respect to the "ordinary care, skill and diligence" element,

> the law imposes upon [persons performing professional services] the duty to exercise a reasonable degree of skill and care, *as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances.*

(Emphasis supplied.) *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 436 (383 SE2d 867) (1989). See also *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 409-410 (395 SE2d 809) (1990). As to whether ethical standards are admissible as some evidence of this standard of care,

> [c]ourts take four different approaches . . . . First, some courts hold that professional ethical standards conclusively establish the duty of care and that any violation constitutes negligence per se. Second, a minority of courts finds that a professional ethical violation establishes a rebuttable presumption of legal malpractice. *Third, a large majority of courts treats professional ethical standards as evidence of the common law duty of care.* Finally, one court has found professional ethical standards inadmissible as evidence of an attorney's duty of care.

(Emphasis supplied.) Note, The Inadmissibility of Professional Ethical Standards in Legal Malpractice After *Hizey v. Carpenter*, 68 Wash. L. Rev. 395, 398-401 (1993); see also Developments in the Law — Lawyers' Responsibilities and Lawyers' Responses, 107 Harv. L. Rev. 1547, 1566-1567 (1994) (examining "the diverse and sometimes conflicting responsibilities of the modern-day lawyer," id. at 1556).[4]

---

[4] Most courts do not hold that violation of the ethical guidelines creates a presumption of negligence, although they do permit discussion of such a violation at trial as

For the following reasons, we agree with the majority rule and we hold that pertinent Bar Rules are relevant to the standard of care in a legal malpractice action.

(b) To be admissible, Georgia law requires that evidence "relate to the questions being tried by the jury and bear upon them either directly or indirectly." OCGA § 24-2-1; see also *MacNerland v. Johnson*, 137 Ga. App. 541 (224 SE2d 431) (1976) ("evidence is relevant 'which logically tends to prove or disprove a material fact which is at issue,' " (citation omitted) id. at 542). According to its preamble, the Code of Professional Responsibility was adopted because

> [i]n this State, where the stability of courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of this State and of the Republic . . . depend[ ] upon our maintenance of justice pure and unsullied. It cannot be so maintained unless the conduct and motives of the members of our profession are such as to merit the approval of all just men.

As "[n]o code or set of rules" could anticipate every eventuality, the Code of Professional Responsibility sets forth a "general guide" for members of the State Bar of Georgia to follow in an effort to achieve the goals set forth in the preamble. The Standards of Conduct contained in State Bar Rule 4-102 are "to be observed by members of the State Bar of Georgia and those authorized to practice law in Georgia . . . and any violation thereof shall subject the offender to disciplinary action and/or punishment . . . ."[5] Given the potential consequences of their violation and the fundamental nature of their purpose, it would not be logical or reasonable to say that the Bar Rules, in general, do not play a role in shaping the "care and skill" ordina-

---

some evidence of negligence. Expert testimony from an ethics specialist may thus be helpful in establishing the appropriate standard of care.
*Developments*, supra at 1567.

[5] The Code of Professional Responsibility and the Standards of Conduct are separate and distinct from the Professionalism considerations contained in State Bar Rule 9-102. The Professionalism considerations are "non-mandatory" and "aspirational," State Bar Rule 9-101, see *Green v. Green*, 263 Ga. 551, 557 (437 SE2d 457) (1993) (Sears-Collins, J., concurring specially), and are intended to encourage courtesy, civility, and respect among members of the profession. See State Bar Rule 9-102. Ethical rules, on the other hand, "can be regarded as a subspecies of legislation — rules that differ from law only in that their enforcement is relatively informal," G. Hazard, Ethics in the Practice of Law (1978), as reprinted in G. Hazard and S. Koniak, The Law and Ethics of Lawyering (1990).

rily exercised by attorneys practicing law in Georgia.

(c) This is not to say, however, that all of the Bar Rules would necessarily be relevant in every legal malpractice action. In order to relate to the standard of care in a particular case, we hold that a Bar Rule must be intended to protect a person in the plaintiff's position or be addressed to the particular harm suffered by the plaintiff. Note, supra at 412; *Fishman v. Brooks*, 487 NE2d 1377, 1381 (Mass. 1986). The Supreme Court of Ohio stated this principle well in *Krischbaum v. Dillon*, 567 NE2d 1291 (Ohio 1991):

> The obvious purpose of the particular provisions in the Code of Professional Responsibility that the contestants sought to put before the jury is to protect clients from abuses that are likely to occur if attorneys [violate the rules]. Laws intended to protect individuals may create norms of behavior, the violation of which may be deemed to be actionable upon the theory that the violator has not acted with due care. [Cit.] While the failure to comply with general rules of conduct . . . will not ordinarily constitute negligence per se, it is a circumstance that can be considered, along with other facts and circumstances, in determining whether the actor has acted with reasonable concern for the safety and welfare of others — that is, with due care.

Id. at 1300-1301. Thus, while a Bar Rule is not determinative of the standard of care applicable in a legal malpractice action, it may be "a circumstance that can be considered, along with other facts and circumstances," id.[6]

3. As this opinion expands upon the applicable rule of law, we remand to the Court of Appeals so that court may reconsider the merits of the appeal in light of this holding.

*Judgment reversed and case remanded to the Court of Appeals. All the Justices concur, except Benham, P. J., who concurs separately.*

BENHAM, Presiding Justice, concurring.

While I applaud the desire of this court to clear up perceived confusion in the trial of legal malpractice cases and agree with the disallowance of ethical violations as a basis for malpractice actions, I must sound a note of caution with regard to our holding that ethical rules are relevant to the standard of care in legal malpractice actions.

---

[6] Of course, even relevant evidence may be excluded if the trial court, in its discretion, finds that the probative value of the evidence is outweighed by its tendency to confuse the issues or the jury. See Green, Georgia Law of Evidence (3rd ed.), § 63.

Our entry into this arena may be premature. There is danger that it will create confusion, erode this court's authority in regulating the practice of law, result in unwarranted prejudice to legal malpractice defendants, foster an avalanche of malpractice complaints, hamper efforts to improve ethical standards and professionalism, and have far-reaching adverse effects in other areas of professional malpractice.

In granting the writ of certiorari in this case, we posed two questions:

> 1. Under what conditions can a violation of the Code of Professional Responsibility or the Standards of Conduct under Bar Rule 4-102 serve as a legal basis for a legal malpractice claim?
> 2. Is a violation of the Code of Professional Responsibility or the Standards of Conduct under Bar Rule 4-102 admissible as relevant evidence in a legal malpractice action?

Our opinion holds that ethical violations standing alone cannot form the basis for legal malpractice actions, but that ethical standards and rules are admissible evidence, relevant to the standard of care to be applied, if they are intended to protect a person in the plaintiff's position or if they address the particular harm suffered by the plaintiff. Implicit in that holding is an affirmative answer to the second question this court posed in granting certiorari.

This decision comes at an awkward time and may introduce boundless confusion into both the professional malpractice arena and the existing system of lawyer discipline. Since this court has the responsibility for regulating the legal profession, we must in essence make laws governing the conduct of lawyers. The legislature performs this function in other arenas, but in doing so it has available to it the means and ability to hold hearings and to consider thoroughly the relative merits of competing interests. Unfortunately, this court must ordinarily depend on the parties involved in litigation to do thorough research and to present the various points of view. However, consideration of the issues presented by the questions we posed in granting the petition for certiorari in this case requires this court to act in somewhat more of a legislative role than usual.

Our court has been extremely careful in the past to take a reasoned and cautious approach in addressing the issue of the role of the Code of Professional Responsibility in the trial of negligence cases. Such an approach is necessary because there has been a time-honored distinction between legal requirements and ethical requirements. The Court of Appeals recognized this clear distinction in its treatment of this issue in this case (*Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 212 Ga. App. 560 (442 SE2d 466) (1994)), basing its decision on

this court's decision in *Davis v. Findley*, 262 Ga. 612 (422 SE2d 859) (1992).

This state has a clear line of cases counseling against the use of the Code of Professional Responsibility in the trial of negligence cases: *Davis v. Findley*, supra; *Tingle v. Arnold, Cote & Allen*, 129 Ga. App. 135 (4) (199 SE2d 260) (1973); *East River Savings Bank v. Steele*, 169 Ga. App. 9 (311 SE2d 189) (1983); *Roberts v. Langdale*, 185 Ga. App. 122 (1) (363 SE2d 591) (1987); *Hendricks v. Davis*, 196 Ga. App. 286 (395 SE2d 632) (1990); and *Coleman v. Hicks*, 209 Ga. App. 467 (3) (433 SE2d 621) (1993). But see *Cambron v. Canal Ins. Co.*, 246 Ga. 147 (8) (269 SE2d 426) (1980); *Tante v. Herring*, 211 Ga. App. 322 (4) (439 SE2d 5) (1993); and *Peters v. Hyatt Legal Svcs.*, 211 Ga. App. 587 (2) (a) (440 SE2d 222) (1993).

Even when this court has sought to remind lawyers of their ethical and professional requirements, the outcome of the case has depended on legal requirements and not ethical and professional requirements. Although there was considerable discussion of what is expected of lawyers in the special concurrence in *Evanoff v. Evanoff*, 262 Ga. 303 (418 SE2d 62) (1992), the case was clearly decided on legal procedural grounds. *Green v. Green*, 263 Ga. 551 (2) (437 SE2d 457) (1993), followed *Evanoff*, supra, and while it incorporated language from the special concurrence in *Evanoff*, the case once again was decided on legal grounds and not ethical or professional grounds. Even the special concurrence in *Green*, supra, counseled against consideration of extraneous matters such as ethics and professionalism because of the potential for prejudice.

The ABA has provided that

"[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." Model Rules of Professional Conduct, 1992 ed., pp. 8-9.

[T]he majority has begun the descent of the slippery

slope of legislating civility and courtesy. In the future, this Court no doubt will have to classify some professionalism standards as more important than others, some transgressions as more unprofessional than others, and some standards as appropriate weapons in the litigation arena and others only as guides for regulating conduct through our attorney disciplinary agencies.

Id. at 557-558.

The main opinion supports its approach with *Cambron v. Canal Ins. Co.*, supra, which was distinguished in the Court of Appeals' opinion in this case. Since *Cambron* was decided, over 15 years ago, it has never been cited by this court as authority for treatment of legal malpractice cases.

The law has been clear for some time that in order to make out a case of legal malpractice, the plaintiff must show the existence of three elements: (1) a lawyer-client relationship; (2) breach of a standard of care; and (3) damage proximately caused by the breach. *Rogers v. Norvell*, 174 Ga. App. 453 (2) (330 SE2d 392) (1985). This common law remedy has been used repeatedly and oftentimes successfully to redress grievances and there seem to be no apparent inadequacies in the common law remedy that would require this court to provide additional remedies and procedures.

The present standard of care in legal malpractice cases is the same for all other professional malpractice cases.

"[M]embers of all professions must exercise the degree of skill, prudence, and diligence which ordinary members of the particular profession commonly possess and exercise" (Ga. Law of Damages, p. 689, § 36-19). . . .

*Tante v. Herring*, supra at 325. It makes no difference whether the professional is a lawyer (*Hughes v. Malone*, 146 Ga. App. 341, 345 (247 SE2d 107) (1978), "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. [Cits.]"), doctor (*Beauchamp v. Wallace*, 180 Ga. App. 554, 555 (349 SE2d 791) (1986), "that degree of care and skill exercised by the medical profession generally under similar conditions and like circumstances . . ."), engineer (*Robert &c. Assoc. v. Tigner*, 180 Ga. App. 836, 842 (351 SE2d 82) (1986), "reasonable performance of similar duties by design engineers engaged in the performance of their duties"), or any other professional: they all must adhere to the standard of care in the profession. Therefore, the second prong of a malpractice case as outlined in *Rogers*, supra, adherence to a standard of care, is uniformly ap-

plied. Such an approach provides for certainty, predictability and stability. I have serious concern that allowing evidence of the Code of Professional Responsibility in malpractice cases would place certainty, predictability and stability in doubt and would allow professions with little or no code of ethics to be treated better than professions that have adopted codes of ethics and rules of professionalism.

Heretofore, this court has not allowed evidence of a violation of the Code of Professional Responsibility in legal malpractice cases — and for good reasons. We have sought to keep the line of demarcation clear between legal requirements and ethical requirements. The use of such a bright line has worked to avoid confusion and chaos in such litigation.

Although the main opinion might contemplate that the Code of Professional Responsibility will make a cameo appearance in malpractice cases, I fear that experience will show that it will play a leading role and the cast of horrors that will attend the allowance of such evidence will be legion.

This court has exclusive jurisdiction to regulate the practice of law. *Wallace v. Wallace*, 225 Ga. 102 (166 SE2d 718) (1969). In order to carry out that responsibility, we have put in place a procedure for handling complaints against lawyers. If trial court proceedings are allowed to establish that a violation of an ethical rule has taken place, our ability to regulate the practice of law might be seriously eroded. One result could be the filing of a bar complaint before or along with the filing of every legal malpractice action.

Having taken the step we have taken today, we must be wary of the myriad of problems which will attend the determination of an ethical violation in the trial of a malpractice case. Must there be a determination by this court of an ethical violation before evidence is admissible in a malpractice action? If not, can the trier of fact in a malpractice case determine the existence of a violation? If so, will the burden of proof be a preponderance of evidence as is required in a civil case or must it be evidence beyond a reasonable doubt as is required in a disciplinary case? If evidence of ethical violations is to be admissible for malpractice plaintiffs, will a lawyer be able to plead compliance with the Code of Professional Responsibility in defense of a malpractice action? If a lawyer does plead compliance, will a determination in his favor act as a bar to any future bar disciplinary action based on the same allegation?

It is obvious that admission of ethical violations in malpractice cases will cause confusion, and the confusion may not be limited just to the trial of legal malpractice cases. It may well bleed over into other professional arenas. In the same way that the expert affidavit requirement imposed by statute on medical malpractice cases has

been held to apply to all professional malpractice cases,[7] evidence of professional standards will necessarily be admissible against a member of any profession which has established them.[8]

Just recently the legislature adopted sweeping tort reform legislation and a common thread running through each piece of legislation was a desire to rein in insurance premiums by providing clearly defined methods of pursuing professional malpractice claims and definite limitations on the amount of recovery. Rather than stemming the tide of malpractice litigation as was contemplated by the tort reform movement, this court's action today may cause litigation to proliferate, insurance premiums to skyrocket, and the courts to become hopelessly embroiled in interpreting the meaning and applicability of hundreds of professional codes of ethics and rules of professionalism.

I fear also that many professions, in prudent response to the majority opinion, will throttle back on their ethical requirements. Rather than advancing ethics and professionalism, the majority opinion may cause many professional codes to be allowed to stagnate; others will be repealed outright to avoid their use in malpractice actions. Ethical rules which require lawyers to act as officers of the court may be subordinated to rules requiring advocacy on behalf of clients in order to avoid potential tort liability to a client dissatisfied with an attorney's level of aggressiveness. Unbridled and blind advocacy could become the order of the day and the professionalism movement, for all practical purposes, would be dead in the water.

Although I have concurred (with some reluctance) in this court's decision in this case, this separate concurrence results from my conviction that there must be at least one voice raised in alarm, giving warning that without vigilance on the part of this court, the trial bench, and the practicing bar, there may be dire consequences stemming from this infusion of ethical concepts into a heretofore strictly legal forum.

DECIDED FEBRUARY 27, 1995 —
RECONSIDERATIONS DENIED MARCH 20, 1995 AND MAY 5, 1995.

*Jones, Brown, Brennan & Eastwood, Taylor W. Jones, Rebecca A. Copeland, William R. Hurst, L. Ray Patterson,* for appellant.
*Freeman & Hawkins, Howell Hollis III, H. Lane Young II,*

---

[7] *Housing Auth. of Savannah v. Greene,* 259 Ga. 435 (383 SE2d 867) (1989).
[8] "Profession" means the profession of certified public accountancy, architecture, chiropractic, dentistry, professional engineering, land surveying, law, psychology, medicine and surgery, optometry, osteopathy, podiatry, veterinary medicine, registered professional nursing, or harbor piloting. OCGA § 14-7-2 (2).

*Christine L. Mast,* for appellees.

*Walter R. Phillips, McAlpin & Henson, Kirk M. McAlpin, Jr., Jana K. Bishop, Donald R. Harkleroad, James P. Hermance, Timothy J. McGaughey,* amici curiae.