**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 1, 2015**

# In the Court of Appeals of Georgia

A15A0770. TUCKER et al. v. ROGERS.

BARNES, Presiding Judge.

Alan David Tucker and Alan David Tucker, Esq., P.C., appeal the trial court's grant of partial summary judgment on liability to Tucker's former client James Rogers in this legal malpractice case. For the reasons that follow, we reverse.

"To prevail on summary judgment, the moving party must show that no genuine issues of material fact remain to be tried and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant summary judgment as a matter of law." (Citation omitted.) *Duke Galish v. Arnall Golden Gregory,* 288 Ga. App. 75, n. 1 (653 SE2d 791) (2007). We view the evidence in the light most favorable to the respondent, as the non-moving party. *Peters v. Hyatt Legal Servs.*, 211 Ga. App. 587, 592 (2) (b) (440 SE2d 222) (1993).

So viewed, the evidence establishes without dispute that Rogers was on his motorcycle stopped at a stop sign on November 24, 2006, when a car turned onto the

street where Rogers was waiting and struck him head-on. Rogers initially attempted to negotiate a settlement with the other driver's liability carrier but signed a contingency fee contract with Tucker on December 10, 2007 because he was dissatisfied with the carrier's $7,500 offer of settlement.

The contract provided that Rogers retained Tucker's firm "to prosecute, settle, compromise or litigate all claims arising" from the November 24, 2006 incident, "as a result of which [Rogers] may have an action for damages against [the other driver.]" It authorized Tucker "to fully investigate the facts and law relative to the Matter" and gave him "the discretionary right to determine whether or not it is feasible to pursue the Matter." If Tucker determined it was feasible to pursue the claim, he would be entitled to a contingent fee of one-third of the sum recovered if the claim was settled before suit was filed, 40 percent if suit was filed, and 45 percent if any judgment was appealed or post-judgment collection proceedings were required. Tucker was not authorized to settle or compromise the client without Rogers' specific approval, and if a lawsuit did not end favorably, Rogers would owe no attorney fees to Tucker, although Rogers would remain responsible for paying fees and costs. Finally, the contract contained a disclaimer noting that Tucker had no control over the length of time it would take to reach a resolution of the case once he filed a lawsuit.

Rogers began obtaining treatment from a physician recommended by Tucker. After Rogers finished treating with that physician, Tucker sent a demand letter on October 3, 2008, to the other driver's insurer, offering to settle the claim for $100,000. The insurer countered with the same $7,500 it offered to Rogers before he hired Tucker. On October 21, 2008, about a month before the expiration of the statute of limitations, Tucker called Rogers' home number and found it had been changed, then called Rogers' cell phone number twice and Rogers did not answer. Tucker testified that although he had Rogers' work number in his file, he did not call it because it was a work number and "[r]ather than bother him at work," he chose to write Rogers a letter instead and send it by regular mail.

In the letter, Tucker stated that the insurer had offered to settle the claim for $7,500 and advised Rogers that he thought the claim was worth more than that. He advised Rogers to decline the settlement offer and allow him to file suit. The letter continued,

> However, the decision to file suit or take their offer is totally up to you. Please remember that the "Statute of Limitation" runs on your claims against [the other driver] on November 23, 2008. If you want me to file suit, you must authorize me to do so *prior* to November 23, 2008. Please advise me as to how you wish to proceed. I have tried to call you several times and have been unable to reach you.

3

Tucker made no further efforts to contact Rogers and did not hear back from him. He did not know for certain that Rogers had received the letter or whether Rogers was incapacitated in any way. The statute of limitation ran on November 24, 2008, without suit being filed. On December 15, 2008, Tucker testified, he picked up Rogers' file, "noticed [Rogers] hadn't called," and closed it. Then, although he did not have Rogers' permission to settle the case, Tucker decided to contact the insurance adjuster to see if he "could at least get [Rogers] his $7500" since the statute had already run. Tucker sent the adjuster a letter on December 18, 2008, accepting her October 21, 2008, offer to settle Rogers' claims for $7,500. When asked why the insurer agreed to honor the settlement offer even though the statute of limitation had expired, Tucker theorized that perhaps the insurer did so due to Tucker's "long working relationship" with the adjuster.

Shortly afterward, someone from the insurance company called Tucker's office and asked his assistant if Rogers were married, and if so, was she a party to the settlement and for her name and social security number. The assistant tried calling the three telephone numbers in Rogers' file, and reached Rogers on his cell phone. The cell phone number was written on a post-it note in the file and had been in the file folder since the file was created on December 10, 2007. When Rogers asked why the

4

assistant wanted the information, she responded that the insurance company had asked for it and she thought it had something to do with a check. Rogers asked the assistant what she was talking about, and she said all she knew was that the adjuster called and asked her for the name and social security number of Rogers' wife.

Rogers came to Tucker's office to ask about his case. Tucker told him he had a check "for $7,000 and some change," but Rogers protested that the insurer had already offered him $7,500 and he would not take it, which is the reason he hired Tucker. Tucker then told Rogers that the statute of limitation had run and it was too late to file suit. Rogers testified that the first time he had ever seen Tucker's October 21, 2008, letter was the day he went to Tucker's office in December 2008. Rogers obtained a copy of his file and subsequently sued Tucker for legal malpractice, breach of fiduciary duty, breach of contract, punitive damages, and attorney fees under OCGA § 13-6-11.

Following discovery, Rogers moved for partial summary judgment as to liability for legal malpractice, based on two separate violations of the standard of care: (1) Tucker's failure to file suit before the expiration of the statute of limitations, and (2) Tucker's settlement of Rogers' claim without permission. Rogers further sought summary judgment as to proximate cause, arguing that Tucker's failure to file

suit before the statute expired made Rogers lose his right to pursue a personal injury suit against the driver who hit him. Finally, Rogers sought summary judgment on the liability of the defendant in the underlying case, because Tucker had admitted that it was a clear liability case.

The trial court granted the motion for partial summary judgment and found no genuine issues of material fact regarding liability for legal malpractice, proximate cause, and liability of the other driver in the underlying personal injury case. On appeal, Tucker argues that the trial court erred on each of these issues.

1. To prevail on a claim for legal malpractice, the plaintiff must show three things: (1) that plaintiff employed the defendant attorney, (2) that the attorney failed to exercise ordinary care, skill and diligence, and (3) that this failure proximately caused damages to the plaintiff. *Paul v. Smith, Gambrell & Russell*, 267 Ga. App. 107, 108 (1) (599 SE2d 206) (2004). In this case, the parties do not dispute that Rogers hired Tucker to represent him in his personal injury claim, but Tucker argues on appeal that genuine issues of material fact exist for a jury to determine regarding the second and third prongs of the malpractice claim: whether his actions breached the standard of care and if so, whether the breach proximately caused damages to the plaintiff.

a. Tucker asserts that the trial court erred in granting summary judgment on the issue of legal malpractice because questions of fact exist for a jury to determine regarding whether he breached the standard of care by failing to file suit before the statute of limitation ran. Tucker also points out that Georgia's Code of Professional Responsibility alone does not determine liability in a legal malpractice action, and argues that, under the circumstances in this case, his failure to file suit before the statute of limitation expired did not make him strictly liable.

Both Tucker's expert and Rogers' expert agreed that an attorney should consult with a client before filing a lawsuit. As Tucker's assistant observed, "A lot of people don't want a lawsuit," and so standard practice in Tucker's office was to send out a letter and tell them when the statute will run so that if they want suit filed the clients can contact Tucker and let him know.

Our appellate courts have held that

> an alleged violation of the Code of Professional Responsibility (State Bar Rules 3-101 et seq.) or the Standards of Conduct (State Bar Rule 4-102), standing alone, cannot serve as a legal basis for a legal malpractice action. ... This is so because[,] while the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not

7

establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof.

(Citations and punctuation omitted.) *Allen v. Lefkoff, Duncan, Grimes & Dermer P.C.*, 265 Ga. 374 (1) (453 SE2d 719) (1995); Georgia Rules of Professional Conduct, Chap. 1, Scope ("These Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability."). While a violation of the Professional Code does not per se establish legal malpractice liability, however, "pertinent Bar Rules are relevant to the standard of care in a legal malpractice action." *Allen*, 265 Ga. at 376 (2) (a).

Tucker testified that he had no authority to file suit without explicit instructions from Rogers, and contends that the statute ran without suit being filed because Rogers failed to inform him that he had changed his home number, failed to answer his cell phone when called twice in one day, and failed to respond to Tucker's October 21, 2008, letter seeking permission to file suit. Tucker needed permission from Rogers to file suit, he testified, because his fee would increase from one-third to 40 percent and because Rogers would become responsible for paying the costs of filing suit.

Tucker's expert on legal malpractice testified that the decision whether to file suit belonged to the client, and that an attorney is not automatically obligated to file suit solely because he had been retained as counsel. Whether an attorney was entitled to file suit on behalf of a client depended on whether he was authorized to do so, and that authority depended on the case, the client, and the understanding between the attorney and client, the expert said. In the expert's opinion, the provision in the fee agreement that Rogers retained Tucker to prosecute or litigate the claims, was just a "standard sort of language used that any of those possibilities may occur during the representation," and did not authorize Tucker to file suit on Rogers' behalf. Finally, Tucker's expert testified that Tucker's actions in sending a letter via regular mail a month before the statute, asking Rogers to elect whether to settle for $7,500 or file suit, and then making no further attempt to contact Rogers before the statute ran, did not fall below accepted standards of care. Tucker was aware of the date the statute would run, he informed Rogers, and Rogers "missed the statute if he wanted his lawsuit filed" by failing to respond to the letter.

Tucker's expert would have done things differently, and would have filed suit with his client's permission long before the statute was close to expiring. But how long in advance of the statute's expiration a suit should be filed, he asserted, was

9

entirely "driven by the communication with your client and your advice given to the client and your instructions received from the client and there has to be a meeting of the minds." Both Tucker and his expert testified that they thought that the parties' fee agreement in this case did not authorize Tucker to file suit without Rogers' permission.

Roger's legal malpractice expert was of the opinion that Tucker's actions fell below the standard of care because he failed to obtain a response from the client about whether to accept the settlement offer or file suit before the statute ran. In the expert's opinion, "sending a letter to a client that places an affirmative duty on the client to respond to you and [assuming] that the absence of that response constitutes an acceptance of the offer you advise they not take" did not meet the standard of care. And in her opinion, sending the letter in this case with a fairly short time before the filing deadline was "extremely unusual." Further, the expert opined, Tucker had the authority and permission to file suit in the case pursuant to the fee contract, and did not require further permission to file under Bar Rule 1.2 (a), which provides that a lawyer is impliedly authorized to do what is necessary to effect the purpose of the engagement.

The competing expert testimony regarding whether Tucker's actions fell below the standard of care or not constitutes a genuine issue of material fact that must be resolved by a jury.

b. Tucker also contends that the trial court erred in holding that Tucker violated the applicable standard of care in accepting the insurer's offer to settle Rogers' claim for $7,500 after the statute ran. We disagree.

Tucker admitted he had no authority to settle Rogers' claim without express permission, and the parties' contract explicitly required that Tucker obtain approval from Rogers before agreeing to a settlement. Rogers' expert testified that accepting the offer violated not only the parties' contract but also the Code of Professional Responsibility. Tucker's expert testified that telling the insurance company that Rogers accepted its $7,500 offer without talking to Rogers was "probably a technical violation."

The experts thus agree that Tucker violated the applicable standard of care by accepting a settlement offer that the insurer was not obliged to pay after the statute of limitation ran, and the trial court did not err in so finding.

2. Tucker also argues on appeal that the trial court erred in finding that Tucker's breach of the standard of care was the proximate cause of Rogers' damages.

11

We agree. Based on our conclusion in Division 1 (a) that a jury question exists as to whether Tucker violated the standard of care by not filing suit before the statute ran, it follows that the trial court erred in granting summary judgment on the issue of whether that breach proximately caused damages.

Further, while the experts agreed that Tucker breached the standard of care in accepting the insurer's offer without consulting Rogers, Tuckers' expert testified that accepting the insurer's offer after the statute expired actually benefitted Rogers because there was no claim left to settle after the statute expired. Whether this breach proximately caused damages is therefore a factual issue for the jury to resolve.

3. Finally, Tucker argues that the trial court erred in granting summary judgment to Rogers on the liability of the at-fault driver in the underlying personal injury claim.

> An action for the negligence of the attorney in the unskillful conduct and management of litigation is for the value of the claim lost through such negligence. The claim must be valid, and every fact essential to its validity must appear, and it must further appear that the party against whom the claim was asserted was solvent.

(Citation and punctuation omitted.) *McDow v. Dixon*, 138 Ga. App. 338 (226 SE2d 145) (1976). If the plaintiff proves the first two elements of a legal malpractice claim,

12

he must then "show that, but for the attorney's negligence in the underlying case, the plaintiff would have prevailed." (Citation and punctuation omitted.) *Leibel v. Johnson*, 291 Ga. 180, 182 (728 SE2d 554) (2012). This phase is "the so-called 'suit within a suit,' to determine whether the client was, in fact, damaged by that negligence. Thus, the ultimate goal of the 'suit within a suit' is to determine what the outcome should have been if the issue had been properly presented in the first instance." Id.

Here, Tucker testified that the other driver in the underlying incident was clearly liable for colliding with Rogers as he waited on his motorcycle at a stop sign, and that he thought that Rogers' damages claim was worth more than $7,500. He advised Rogers in his October 2008 letter not to take the offer of $7,500, which was the amount the insurer had offered Rogers a year before and which resulting in him hiring Tucker. Tucker further testified that if the insurer had "put [$]25,000 on the table" he would have told Rogers to consider the offer. And the record contains some proof that Rogers could have recovered a damages award because the tortfeasor was insured. The record thus establishes no issue of fact as to the liability of the defendant in the underlying personal injury claim, and the trial court did not err in this regard. We note, however, that a question of fact remains regarding the amount of damages

13

a jury would have awarded Rogers if Tucker had filed suit before the statute of limitation expired and the case had gone to trial.

In summary, the jury must first determine whether Tucker violated the applicable standard of care in the events leading up to the expiration of the statute of limitations without suit being filed. If he did not, then the jury should consider only whether his violation of the standard of care in settling Rogers' claim without consulting him proximately caused damages. On the other hand, if the jury finds that Tucker did violate the standard of care by allowing the statute to expire without filing suit, then the jury should consider whether the breach proximately caused damages, based on the value of his underlying personal injury claim.

*Judgment reversed. Ray and McMillian, JJ., concur.*